## State of Vermont v. Ernest R. Thomas

[565 A.2d 1335]

No. 85-181

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed August 4, 1989

*Jeffrey L. Amestoy*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*John E. Pyatak*, South Newfane, and *Martin and Paolini*, Barre, for Defendant-Appellant.

**Dooley, J.** Defendant appeals from a conviction after a jury trial of petit larceny (13 V.S.A. § 2502) and felony possession of cocaine (18 V.S.A. § 4224(e)(1)(A)). We affirm.

Defendant was arrested following a complaint to police that a person, later identified as defendant, was breaking into a soda vending machine at a motel in Brattleboro. When the police arrived, the motel owner approached and directed them towards a vehicle which was parked in the motel lot. The vehicle started up as the police moved toward it. Defendant and a companion were in the vehicle. The police approached the vehicle, ordered the two occupants out, and searched it. They found $146.55 in change (mostly in quarters) in a plastic container in the vehicle, another $45.80 in change (again mostly in quarters) under the floor mat and four rubber gloves. A pat-down search of the defendant turned up a small

vial of what the State asserts is cocaine. The police also found soda machine keys, one of which was capable of opening the soda machine at the motel.

At trial, the daughter of the motel owner described her observation of the defendant at the soda machine attempting to open it with a key. The owner testified that he saw defendant and his companion closing the door to the soda machine. He also testified that the soda machine had not been serviced for eleven days, and that it was found to contain few cans of soda and no money. The jury convicted defendant on both the petit larceny and possession of cocaine charges.

Defendant argues first that the State failed to identify the money allegedly stolen from the soda machine as the same money found in the automobile at the scene. Defendant argues that the State had this burden because he raised doubts as to the identity of the money, based on testimony that the son of his companion was working as a waiter and kept the tips he received from his work in the vehicle.

Conceding that circumstantial evidence is sufficient for a conviction, *State v. Colby*, 140 Vt. 638, 642, 443 A.2d 456, 457 (1982), defendant nevertheless maintains that the evidence, viewed "in the light most favorable to the state and excluding modifying evidence," was not "evidence fairly and reasonably tending to show the defendant guilty beyond a reasonable doubt." *State v. Byrne*, 149 Vt. 224, 228, 542 A.2d 276, 279 (1988) (citing *State v. Burnham*, 145 Vt. 161, 165, 484 A.2d 918, 921 (1984)).

■ Defendant presents his case as if the only two operative facts were the absence of money in the vending machine and the presence of change in the car. He ignores mention of additional incriminating evidence: an eyewitness observed defendant, believed he had broken into the machine and summoned the police; the machine contained few cans of soda and no money; and a matching vending machine key was found in his possession. These are important factual links in the chain of circumstantial evidence presented to the jury. While the money found in the car was not identified as the same money missing from the soda machine, it would be almost impossible to prove that coins found on a suspect were the same ones that were stolen from a vending machine.

Imposing that kind of requirement would limit prosecutions for vending machine thefts to cases where suspects were apprehended at the scene *flagrante delicto*, and such proof is not required. See *Russell v. United States*, 408 F.2d 1280, 1281 n.4 (D.C. Cir.), *cert. denied*, 395 U.S. 928 (1969). The evidence in this case sufficed to allow the jury to find defendant guilty beyond a reasonable doubt.

Defendant next argues that the State failed to prove beyond a reasonable doubt that the substance found in his possession was a regulated narcotic drug as defined in 18 V.S.A. § 4201(16), because its witness did not testify to the precise chemical composition of the substance obtained in the search of the car. Defendant is raising a variation of what has been labeled the "cocaine isomer strategy." See *United States v. Ross*, 719 F.2d 615, 617 (2d Cir. 1983). The defense is based on the fact that cocaine exists in eight isomers—that is, that there are forms of cocaine with different molecular structures. Only one of the isomers is derived from the coca leaf and only one other is a narcotic. See *United States v. Francesco*, 725 F.2d 817, 820 (1st Cir. 1984). The cocaine isomer strategy in theory shows that only the isomer derived from the coca leaf fits within the statutory definition of a narcotic drug under 18 V.S.A. § 4201(16)[1] but that the testing done for the prosecution is unable to distinguish among the various isomers. Thus, defendant asserts that the State failed to prove its case.

The cocaine isomer strategy is usually based on expert testimony and even then has rarely succeeded. See cases collected in *United States v. Francesco*, 725 F.2d at 820 n.1; *Darby v. State*, 516 So. 2d 775, 783 (Ala. Crim. App. 1985) (citing federal and state cases), *rev'd on other grounds*, 516 So. 2d 786 (Ala. 1987). Defendant attempted to introduce the defense here solely through cross-examination of the State's expert witness. That witness testified on direct examination that the substance found on defendant was cocaine which was derived from the plant of the coca leaf. On cross-examination,

[1] Under 18 V.S.A. § 4201(16), narcotic "means ... coca leaves ... or derivative." Thus, defendant argues that synthetic cocaine is not a narcotic. Defendant was charged with possessing a regulated drug containing 500 milligrams or more of a narcotic drug. See 18 V.S.A. § 4224(e)(1)(A).

defense counsel elicited that the witness knew that "synthetic cocaine" exists. When asked whether he did any tests to distinguish cocaine derived from the coca leaf from synthetic cocaine, the expert answered: "All I know, it was cocaine. The statutes in the state of Vermont do not distinguish between synthetic and natural cocaine."[2] Defendant claims that this cross-examination sufficiently undermined the expert's identification of the substance to require acquittal.

We cannot accept that one question and answer on cross-examination had the devastating effect that defendant would now attribute to them. The expert testified that the substance was derived from the coca leaf. The nonresponsive and vague answer on cross-examination was not sufficient to take the case from the jury. At best, it invited follow-up, but defendant failed to do so. Nor did defendant offer evidence to show the significance of the expert's answer in light of the defense theory. Indeed, the significance is apparent to us only because we have acquired the scientific background on cocaine isomers from reading appellate opinions. The jury never had that background.

■ For the above reasons, we believe this case is most similar to those where the defendant fails to lay the evidentiary base for the cocaine isomer defense. In such a case the prosecution is not required to prove which isomer was found on the defendant. See *United States v. Puglisi*, 790 F.2d 240, 242 (2d Cir.), *cert. denied*, 479 U.S. 827 (1986); *United States v. Francesco*, 725 F.2d at 821–22. There was no error.

■ Defendant's final contention is that his cross-examination of the State's expert prompted the requirement for "further sufficient proof" of the accuracy of the chemical test of the substance. In general, this contention is answered by the above discussion of the cocaine isomer strategy. We add

---

[2] The definition of narcotic under 18 V.S.A. § 4201(16) also includes "every substance neither chemically nor physically distinguishable from" those taken from coca leaves and substances made "by means of chemical synthesis" where designated by regulations of the Vermont Board of Health adopted under § 4202. The State asserts in its brief that synthetic sources of cocaine fit within this definition under a regulation of the Vermont Board of Health adopted under § 4202(a). Accordingly, the State argues that the witness's statement was accurate. This claim was not made below, and in view of our disposition, we do not reach it.

only an observation from *State v. Blake*, 151 Vt. 235, 237, 559 A.2d 676, 677–78 (1989), where defendant challenged the method used by the State's expert to assess blood alcohol content. There, we noted that the calculation of the State's expert did not have to be "an absolute certainty" and that degrees of uncertainty could be weighed by the jury in determining whether the State had met its burden of proof. Here, defendant does not question that the State bore the burden of proof beyond a reasonable doubt on the question of whether the substance was in fact cocaine and does not suggest that the jury instruction failed clearly to convey the extent of that burden.

*Affirmed.*