NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 60

No. 2015-164

State of Vermont                                                 Supreme Court

                                                                On Appeal from
        v.                                                      Superior Court, Chittenden Unit,
                                                                Criminal Division

Willy Levitt                                                     March Term, 2016

Michael S. Kupersmith, J.

Thomas J. Donovan, Jr., Chittenden County State's Attorney, and Pamela Hall Johnson,
  Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

Matthew F. Valerio, Defender General, and Marshall Pahl, Appellate Defender, Montpelier, for
  Defendant-Appellant.

PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.    **DOOLEY, J.**    Defendant was convicted of simple assault in a jury trial in December 2014 and placed on probation. He requests that this Court reverse his conviction and remand for a new trial because the trial court improperly defined reasonable doubt for the jury, thus lowering the standard of proof. In the alternative, he raises three arguments regarding his probation conditions: (1) that they were unlawfully imposed on the grounds that the sentencing court mistakenly believed they were "standard"; (2) that the court failed to inform defendant of the content of the conditions at sentencing; and (3) that the imposed individual conditions were overbroad and vague, impermissibly delegated court authority to his probation officer, were unrelated to his offense, rehabilitation, or public safety, and were not supported by factual

findings. We affirm defendant's conviction and conditions H, J, and L, but remand on condition I and strike all the other complained-of conditions.

¶ 2. Defendant was tried for simple assault in a jury trial on December 15, 2014, stemming from an incident at a protest at Vermont Gas headquarters in May 2014. In charging the jury, the trial judge informed the jurors that the State was obligated to prove defendant's guilt beyond a reasonable doubt, stating that:

> Few things in life are absolutely certain. To say that you believe something beyond a reasonable doubt is to say that you are convinced of it with great certainty. But proof beyond a reasonable doubt does not require you to be absolutely or 100 percent certain. A reasonable doubt may arise from the evidence or from the lack of evidence.

Defendant did not object to this instruction.

¶ 3. The jury returned a guilty verdict. Defendant was sentenced in a hearing on March 13, 2015. The state argued for fourteen days of incarceration, while the defense requested a fine or suspended sentence. No evidence was presented, and no mention of probation was made. Ultimately, the court imposed a sentence of three to six months, suspended but for twenty days of work crew, and a $300 fine and a surcharge. The court also placed defendant on probation, imposing—without naming or describing—"standard conditions A through N, and also condition P", which are as follows:

A. You shall notify your probation officer within 48 hours if you are arrested or given a citation for a new offense.
B. You must not be convicted of another crime.
C. You must regularly work at a job or look for work, if your probation officer tells you to do so. You must get job training if your probation officer tells you to do.
D. You must regularly work at a community service job if the court orders you to do so.
E. You must support your dependents and meet other family responsibilities.
F. You must meet with your probation officer or designee whenever he/she tells you to do so.
G. If you change your address or move, you must tell your probation officer within two days.

H. If you change or lose your job, you must tell your probation officer within two days.
I. You cannot leave the State without written permission from your probation officer.
J. Upon request, and without delay, you must allow the probation officer to visit you wherever you are staying.
K. If the probation officer or the court orders you to go to any counseling or training program, you must do so. You must participate to the satisfaction of your probation officer.
L. You must not buy, have or use any regulated drugs unless they are prescribed by a doctor.
M. Your probation officer or any other person authorized by your probation officer can require you to have random urinalysis testing.
N. Violent or threatening behavior is not allowed at any time.
P. You shall not drink alcoholic beverages to the extent they interfere with your employment or the welfare of your family, yourself, or any other person. You must submit to any alcosensor test or any other alcohol test when your probation officer or their designee tells you to do so.

Defendant did not raise any objections to these conditions at sentencing. The probation order also included condition 31, which stated "Standard conditions A-N and P apply [;] Condition N is amended to include verbal, written, or electronic threats of personal injury or property damage are not permitted." The court also added conditions preventing defendant from having contact with a VT Gas Systems communications coordinator—the complainant in the criminal case— and from going on VT Gas Systems' property. This timely appeal followed.

¶ 4. On appeal, defendant makes four primary arguments: (1) the trial court committed structural error by defining "reasonable doubt" for the jury as it did and, as a result, diminished the constitutional burden of proof; (2) the conditions the trial court imposed because they are "standard" were erroneously imposed because they are not standard, but discretionary; (3) because the trial court announced it was imposing standard conditions without informing defendant as to the content of those conditions, defendant was deprived of his right to be present at his sentencing and; (4) probation conditions C, D, E, H, I, J, K, L, M, and P are overbroad and vague, impermissibly delegated the court's authority to sentence to the probation officer, are

3

unrelated to the conduct for which defendant was convicted, are not related to the legitimate goals of sentencing, and are not supported by factual findings. In response to the defendant's challenges to specific conditions, the State concedes that conditions C, D, E, K, M, and P may be struck, leaving in issue conditions H, I, J, and L. We affirm defendant's conviction and conditions H, J, and L, but remand condition I, strike those conditions the State has agreed to eliminate, and order condition 31[*] to be amended accordingly.

¶ 5. First, we consider defendant's argument that in endeavoring to define the phrase "beyond a reasonable doubt" for the jury as meaning convinced "with great certainty" the trial court diminished the State's burden of proof under In re Winship, 397 U.S. 358, 364 (1970), which observes that the "government cannot adjudge [a defendant] . . . guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty." This language in Winship was part of the explanation of why due process requires a beyond-a-reasonable-doubt standard of proof in juvenile delinquency cases; it did not require that the term "utmost certainty" be part of jury instructions. Defendant argues, however, that it applies to jury instructions and by using the words "great certainty" rather than "utmost certainty" the court committed structural error, mandating automatic reversal of his conviction. We disagree and affirm defendant's conviction.

¶ 6. In order to preserve an objection to jury instructions, a criminal defendant must object "before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." V.R.Cr.P. 30; see State v. Hinchcliffe, 2009 VT 111, ¶ 33, 186 Vt. 487, 987 A.2d 988 (noting purpose of Rule 30 is "to give the trial court one last opportunity to avoid an error" (quotation omitted)); State v. Wheelock, 158 Vt. 302, 306, 609 A.2d 972, 975 (1992) (noting that "failure to object to an instruction after it is given to the jury is

---

[*] Defendant has not challenged Condition 31. We amend it because the first sentence of the condition purports to state which of the lettered conditions apply.

considered a waiver of any error even if the substance of the objection is made known before the jury charge."). Where a defendant fails "to comply with Rule 30, we review only for plain error." State v. Vuley, 2013 VT 9, ¶ 40, 193 Vt. 622, 70 A.3d 940. In reviewing a jury instruction for plain error, we determine whether the alleged error "would result in a miscarriage of justice," considering whether there was an error, whether the error was obvious, whether the error affected substantial rights and resulted in prejudice to defendant, and whether the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." State v. Herrick, 2011 VT 94, ¶ 18, 190 Vt. 292, 30 A.3d 1285. In determining whether there was a miscarriage of justice, we look at "the record evidence as a whole." Id.

¶ 7. Here, it is undisputed that defendant failed to object to the reasonable doubt instruction after it was read to the jury, so we review the instruction for plain error.

¶ 8. The U.S. Constitution "neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." Victor v. Nebraska, 511 U.S. 1, 5 (1994). As long as the trial court "instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, . . . the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." Id. (citation omitted). Instead, the reviewing court must determine whether, "taken as a whole, the instructions . . . correctly convey the concept of reasonable doubt to the jury." Id. (some alterations and quotation omitted); accord Herrick, 2011 VT 94, ¶ 18.

¶ 9. We have not yet considered the relationship of the Winship language to our criminal jury instructions in a precedential opinion. See State v. Brandt, No. 2011-109, 2012 WL 5974987 at *2 (Vt. Sept. 26, 2012) (unpub. mem.), https://www.vermontjudiciary.org/UPEO 2011Present/eo11-109.pdf (considering identical jury instructions and finding no error because "reference to 'great certainty' did not diminish the [reasonable doubt] instruction or introduce a lower standard of proof" and jurors were "sufficiently informed . . . of the correct burden of

5

proof to apply."). Our precedential opinions are, however, instructive in considering defendant's argument. Of primary importance is State v. Francis, 151 Vt. 296, 561 A.2d 392 (1989), where we considered a jury instruction defining reasonable doubt as a "doubt for which you can assign a reason" and doubt "that reasonable people like yourselves would not hesitate to act on [] in matters of personal importance in your own life." Id. at 302, 561 A.2d at 395. Although defendant objected to the instruction and we strongly discouraged the use of such descriptions because they were "potentially misleading," we held that "[o]ur disapproval of the language . . . is not so strong as to cause us to hold one or both to be reversible error." Id., 561 A.2d at 396.

¶ 10. In State v. Blake, we considered the level of certainty required for reliance on expert testimony, and we upheld a defendant's driving under the influence conviction despite the defendant's argument that because the State failed to prove he was under the influence, he should have been acquitted. 151 Vt. 235, 237, 559 A.2d 676, 677 (1989). We held that, at best, the testimony of the defense expert showed that the calculation of the State's expert witness "was not an absolute certainty" and absolute certainty was not required for the jury to find guilt beyond a reasonable doubt. Id.; see also State v. Thomas, 152 Vt. 315, 320, 565 A.2d 1335, 1337 (1989) (holding that "degrees of uncertainty could be weighed by the jury in determining whether the State had met its burden of proof" (citing Blake, 151 Vt. at 237, 559 A.2d at 677-78)).

¶ 11. Our review of caselaw from other jurisdictions indicates that our sister states and the federal courts have declined to accord the phrase "utmost certainty" talismanic significance. For example, in Christmas v. State, the Mississippi Supreme Court considered the defendant's argument that his instruction on reasonable doubt—which stated that "[t]he Court instructs the jury that to be convinced beyond a reasonable doubt, you must be convinced with utmost certainty"—was improperly refused by the trial court. 700 So. 2d 262, 269 n.7 (Miss. 1997). Relying on Winship, the defendant asserted that the U.S. Supreme Court "view[s] 'reasonable

6

doubt' as meaning 'with utmost certainty,' " such that his instruction was "the correct statement of law." Id. at 269.

¶ 12.    The Mississippi Supreme Court affirmed.  They considered the language of the reasonable doubt instruction provided to the jury:

> The law presumes every person charged with a crime to be innocent.  This presumption places upon the State the burden of proving beyond a reasonable doubt each and every element of the crime charged.  If you are not convinced from the evidence beyond a reasonable doubt that [the defendant] is guilty of each and every element of the crime charged, you cannot return a verdict of guilt to the charge.
>
> A reasonable doubt may arise from the evidence, lack of evidence, weight of the evidence, or sufficiency of the evidence, but if it arises it is you (sic) sworn duty to return a verdict of not guilty to the charge.

Id. at 270 n.9.  The Court emphasized that "jury instructions are not viewed in isolation, but as a whole" and that reversal of a conviction is unwarranted if the jury was "fully and fairly instructed by other instructions."  Id. at 269.  By considering the "total instructions given," the Court determined that the trial court's directive was permissible.  Id. at 270; accord State v. Antwine, 743 S.W. 2d 51, 62-63 (Mo. 1987) (en banc) (rejecting defendant's contention that use of "firmly convinced" in reasonable doubt instruction violates Winship as language is valid "when it is considered in context," has been "employed in federal and state courts alike," and properly assists lay jurors in their understanding of "beyond a reasonable doubt"); State v. Butler, 543 A.2d 270, 278 (Conn. 1988) (affirming that reasonable doubt instructions do not require use of terms "moral certainty," "near certainty," or "utmost certainty"); Wilson v. State, 967 P.2d 98, 100 (Ala. Ct. App. 1998) (rejecting defendant's claim that judge should have instructed jury that proof beyond reasonable doubt requires proof to the utmost certainty because "the cases are virtually unanimous that 'proof beyond a reasonable doubt' need not be 'proof to an absolute certainty' ").

¶ 13. Mindful of the need to consider jury instructions as a whole, we evaluate the court's language within the context it was applied:

> A few things in life are absolutely certain. To say that you believe something beyond a reasonable doubt is to say you're convinced of it with great certainty. But proof beyond a reasonable doubt does not require you to be absolutely or 100 percent certain. A reasonable doubt may arise from the evidence or from the lack of evidence.
>
> . . .
>
> You must find the Defendant not guilty when you have a reasonable doubt, even if you believe he is probably guilty. You may find him guilty only if you have no reasonable doubt.
>
> You need not be able to articulate or to voice an explanation for your doubt, and the doubt which you have as an individual need not be the same doubt held by your fellow jurors. Under no circumstances may a guilty verdict be based upon conjecture or suspicion.

Looking at the charge to the jury as a whole, we cannot find the instructions to be sufficiently misleading to be reversible error; any potential diminishment of the State's burden is balanced by the trial court's emphasis upon the presumption of innocence afforded to defendant, the repeated references to the reasonable doubt standard without further attempts to define the term, and the weight jurors should attach to any doubt they feel, even if it cannot be articulated. Under Francis and Blake, and in light of the decisions from other jurisdictions, we conclude that the instructions as a whole do not violate the Winship standard, even if we were to hold that the language in that decision was intended to control jury instructions. Because we find no error, we necessarily find no plain error.

¶ 14. Although we do not find reversible error, we continue our observation that attempting to define reasonable doubt is a "hazardous undertaking," and continue to discourage trial judges from trying such an explanation. Francis, 151 Vt. at 302, 561 A.2d at 396. In a different context, with a different instruction, and where defendant has made a cogent objection to the language, a definitional explanation may be error.

8

¶ 15.    Next, we turn to defendant's argument that the trial court imposed all fifteen probation conditions in error.    Defendant notes that 28 V.S.A. § 252(a) requires only one condition in a simple assault case—permitting revocation of probation if the defendant is convicted of another offense during the probationary period, represented here in condition B. Because the trial court made no findings demonstrating the other fifteen conditions were related to rehabilitation or public safety, id. § 252(b)(18), defendant suggests they were imposed only because the trial court mistakenly believed them to be "standard," rather than discretionary.  We disagree.

¶ 16.    If defendant has preserved an objection in the trial court, "we review the imposition of particular probation conditions . . . under an abuse-of-discretion standard."  State v. Putnam, 2015 VT 113, ¶ 44, __ Vt.__, 130 A.3d 836 (quotation omitted).   In such a case, we will not reverse the trial court's imposition of conditions unless the court's "discretion has been exercised to a clearly unreasonable extent."  State v. Moses, 159 Vt. 294, 297, 618 A.2d 478, 480 (1992).  In the absence of an objection, we review only for plain error.  State v. Gauthier, 2016 VT 37, ¶ 10, __ Vt. __, __ A.3d __.

¶ 17.    State v. Putnam has fully answered defendant's argument.  In Putnam, the trial court orally imposed the "standard conditions of probation," A through S, "with two exceptions" and with several additional conditions appended to the probation order.  2015 VT 113, ¶ 26.  In response to the defendant's assertion that the trial court had erred, as "the only truly 'standard' condition is the one providing" revocation of probation if a defendant is convicted of another offense, we noted that such conditions are standard "in the sense that they appear in an internal judiciary probation order template, as well as a standard plea agreement form generated by the Court Administrator."  Id. ¶ 32.  We recognized that the label "standard conditions" does not reflect a determination that every condition is "presumptively valid" or that the package may be "applied in every case"; nevertheless, we did not find the label sufficient to invalidate a battery

9

of probation conditions by itself. Id. We affirm here that the mere fact the trial court used the term "standard" in an administrative, or even colloquial, sense does not support an inference that the court imposed conditions out of a mistaken belief they were mandatory.

¶ 18. We reach the same conclusion regarding the absence of specific findings in the trial court's decision. As in this case, the Putnam defendant argued that the court was "required to make particularized findings as to each condition." Id. ¶ 45. We rejected this narrow interpretation of § 252, holding that in determining whether a court acted within its discretion in imposing conditions, "we have not required the sentencing court to make specific findings regarding each condition, but have looked to whether the record supports the court's exercise of its discretion." Id. To that end, we must examine the record available to the trial court regarding each complained-of condition and so decline at this stage to strike the conditions on the ground they were all erroneously imposed.

¶ 19. Defendant's third argument is that because the trial court referred "only in a cryptic manner" to the probation conditions, without even "hint[ing] at their content," defendant was deprived of the right to be present at his sentencing as required by Vermont Rule of Criminal Procedure 43(a). Relying on a federal decision under the similar federal rule, United States v. Sepulveda-Contreras, 466 F.3d 166, 171 (1st Cir. 2006), defendant argues that the effect of this violation is that the specific condition challenges he makes on appeal must be evaluated as if they were preserved in the trial court rather than under a plain error standard. He argues that this remedy is appropriate since he was unable to object to probation conditions at sentencing because he was unaware of the substance of the conditions. The State has not opposed the adoption of this remedy in this case, arguing instead that the challenged conditions are valid, lying within the discretion of the trial court. In view of the State's position, we will review for abuse of discretion and not employ a plain error standard of review. We do not, however, decide

10

whether the sentencing in this case violated Rule 43(a) or the appropriate remedy if we found such a violation.

¶ 20.    Finally, we turn to defendant's argument that the probation conditions imposed by the court are overbroad; have no relationship to defendant's offense, rehabilitation, or to public safety; or impermissibly delegate court authority to a probation officer.  As we stated in the introduction, we consider the validity of only conditions H, I, J, and L.  See, supra, ¶ 4.

¶ 21.    A trial court has "broad statutory authority" to place a defendant on probation. State v. Nelson, 170 Vt. 125, 128, 742 A.2d 1248, 1250 (1999).  In imposing conditions of probation, however, a court must, in its discretion, impose only such conditions as are "reasonably necessary to ensure that the offender will lead a law-abiding life or to assist the offender to do so." 28 V.S.A. § 252(a).  Furthermore, a probationary condition that prohibits the probationer from engaging in legal behavior is valid only if it "is reasonably related to the offender's rehabilitation or necessary to reduce risk to public safety."  Id. § 252(b)(16); see Putnam, 2015 VT 113, ¶ 38 ("[A] probation condition that restricts otherwise lawful conduct must be reasonably related to a defendant's particular characteristics."); Moses, 159 Vt. at 298, 618 A.2d at 480 ("A condition is reasonable if it is not unnecessarily harsh or excessive in achieving these goals [of rehabilitation and public protection] . . . . Conditions that restrict a probationer's freedom must be especially fine-tuned." (internal alterations omitted) (citing United States v. Tolla, 781 F.2d 29, 34 (2d Cir. 1986))).

¶ 22.    We consider each of the disputed conditions in turn.  We begin with conditions H and I, which state that defendant must tell his probation officer within two days if he changes or loses his job and that defendant cannot leave Vermont without written permission from his probation officer.  Defendant argues these conditions are overbroad, unrelated to his offense or rehabilitation, and impermissibly delegate the court's sentencing authority to his probation officer.  In particular, he notes condition I provides no "substantive guidance" about the

circumstances under which permission should be granted or denied but gives his probation officer "unfettered authority" to restrict his right to travel.

¶ 23. We note that condition H is a mere notification requirement that neither impinges on any fundamental freedom nor permits a probation officer to wield any kind of discretion. Instead, as directed by 28 V.S.A. § 252(a), condition H is directly related to the "supervision of defendant by his probation officer to assist defendant in leading a law-abiding life." Putnam, 2015 VT 113, ¶ 48 (noting that trial court "could reasonably conclude that defendant's probation officer needs to know where defendant is . . . working to understand defendant's environment, to visit with defendant, and to identify any impediments to successful rehabilitation"). Because condition H is a "basic, administrative requirement[] that [is] necessary to supervised release," United States v. Thomas, 299 F.3d 150, 155 (2d Cir. 2002), it does not burden defendant, unduly restrict protected freedoms, or delegate sentencing authority to a probation officer—we affirm its imposition.

¶ 24. Our past decisions have not considered condition I, which prohibits the probationer from leaving Vermont without the approval of his probation officer. Similar conditions have, however, been considered in other jurisdictions. See, e.g., United States v. Llantada, 815 F.3d 679, 683 (10th Cir. 2016) (concluding condition preventing probationer from leaving judicial district of court without permission of court or probation officer is valid); Pelland v. Rhode Island, 317 F. Supp. 2d 86, 91 (D.R.I. 2004) (agreeing with Federal appellate courts in Seventh and Ninth Circuits and United States District Court for Eastern District of New York that restrictions on interstate travel by probationers are valid; "probationers and parolees have no constitutionally protected right to interstate travel for the balance of their sentences"); People v. Roth, 397 N.W.2d 196, 197 (Mich. App. 1986) ("A condition of probation restricting defendant's right to travel may be imposed without violation of the constitution."); State v. Moody, 148 P.3d 662, 668 (Mont. 2006) (upholding requirement that probationer obtain written

12

permission before leaving assigned district); State v. Stewart, 713 N.W.2d 165, 169 (Wis. Ct. App. 2006) ("Geographical limitations, while restricting a defendant's rights to travel and associate, are not per se unconstitutional."). Defendant makes two arguments in challenging this condition.

¶ 25. The first is that the condition imposes an unconstitutional restriction on his right to travel interstate. The above decisions are reflective of the overwhelming weight of authority that a probationer convicted of a crime loses the right to travel outside the district of the sentencing court. As an example, in delineating its reasoning, the court in Llantada stated:

> . . . [w]e reject [the probationer's] argument that the condition is an unreasonable or unnecessary limitation on his right to travel. [The probationer] points to no federal case with such a holding, and the government provides ample reasons for limiting a person on supervised release to a single judicial district. For example, probation officers have an easier time contacting and speaking with an offender if he is limited to a single area. In addition, such a restriction acts as a deterrent to criminal conduct, which comports with the policy goals of federal sentencing law. Finally, the restriction can be lifted by a parole officer upon request by the parolee.

815 F.3d at 683 (citation omitted). In upholding a travel restriction in State v. Moody, the Montana Supreme Court said the restriction will allow the probation officer to "effectively keep track of [probationer's] whereabouts in order to ensure that she remains on course with treatment." 148 P.3d at 668. We join our sister states and the federal courts in concluding that a condition restricting defendant's ability to travel beyond a specified area, such as the jurisdiction of a court or the state, is valid on its face. In so doing, we note that the condition as written is in fact less restrictive than those in many other jurisdictions—which, as demonstrated above, often restrict defendants to judicial districts or counties. See, e.g., id. at 668 (judicial district); Roth, 397 N.W.2d at 197 (county).

¶ 26. Defendant's second challenge to this condition is based on the delegation to the probation officer to decide whether defendant can travel out of state. On the one hand, a

13

permission authorization helps to mitigate the severity of a location or travel restriction. See United States v. Watson, 582 F.3d 974, 984 (9th Cir. 2009) (upholding geographic restriction because fact probationer can obtain permission from officer "helps to mitigate the severity of the limitation"). On the other hand, in the absence of standards for the exercise of the permission authorization, the probation officer can grant or deny a request to travel for any reason. In general, "the court may not delegate the power to impose probation conditions to a probation officer." Gauthier, 2016 VT 37, ¶ 28. "The court may, however, give probation officers discretion in the implementation of a probation condition." Id.

¶ 27. The interplay of these conflicting policies is demonstrated in State v. Moses in a context relevant to the case before us. Moses involved two probation conditions that gave discretion to a probation officer. One condition required the probationer to live where the probation officer directs. The other required the probationer not to associate with any person prohibited by the probation officer. We upheld the latter condition because it was related to the underlying crime and "where the potential class of victims is broad—and individual associations are not always foreseeable or easily subject to prior approval—the condition necessarily must retain a degree of flexibility to facilitate its proper implementation." Moses, 159 Vt. at 298, 618 A.2d at 480. We disallowed the former condition because "the court turned over to a probation officer the complete power to determine defendant's residence, with no guiding standards." Id. at 300, 618 A.2d at 481. We concluded that under the condition "the probation officer can require defendant to live in a specific place, within or without the State of Vermont, for reasons unrelated to rehabilitation or the prevention of further criminal offenses." Id. We concluded that the court could create appropriate standards to govern the action of the probation officer and remanded for that purpose. Id. at 301, 618 A.2d at 482.

¶ 28. Although the out-of-state travel condition has aspects of both conditions in Moses, we conclude that it is closer to the condition that gave the power to the probation officer

14

to determine where defendant could reside. There are no standards for the exercise of probation officer discretion in the condition and no context is provided by the offense for which defendant was convicted. Unlike the circumstances behind the locational condition in Moses, the reasons why defendant would need to travel outside of Vermont are predictable, and defendant can give prior notice of the time of the travel, destination, and reason for it. Thus, we believe that standards can be created even though they may, in turn, accord substantial discretion to the probation officer in making the decision. We remand for the trial court to add standards to the condition.

¶ 29. Next, we consider condition J, which requires defendant to "upon request, and without delay" allow his probation officer to visit him wherever he is staying. Defendant argues that his offense had nothing to do with his home and that allowing an officer to visit would not serve any permissible purpose. Furthermore, he notes that labelling a mandatory, suspicionless entry of a probation officer into defendant's home a "visit" appears to be an "attempt to circumvent the Fourth Amendment and Article 11" of the Vermont Constitution. We disagree and affirm.

¶ 30. We begin by noting that the home visit is a virtually universal condition of state and federal probation. See, e.g., Wyman v. James, 400 U.S. 309, 317 (1971) (holding that required caseworker visits to homes of welfare recipients is not search in the "traditional criminal law context"); United States v. Munoz, 812 F.3d 809, 821-22 (10th Cir. 2016) (upholding condition that requires defendant to permit probation officer to visit him or her at any time at home or elsewhere); United States v. Reyes, 283 F.3d 446, 460 (2d Cir. 2002) (holding that the "probable cause requirements of the Fourth Amendment do not apply to a federal probation officer conducting a home visit—a far less invasive form of supervision than a search—pursuant to a convicted offender's conditions of supervised release"); Comm. v. LaFrance, 525 N.E.2d 379, 383 (Mass. 1988) (contrasting warrantless searches with the "traditional right to visit and

meet with probationers"); Grubbs v. State, 373 So.2d 905, 908 (Fla. 1979) ("All authorities agree that the probationary supervisor has the authority to visit the probationer's home or place of employment without the necessity of a warrant"). By and large, courts have affirmed that such visits fulfill an administrative, rather than investigatory, function, and noted that if probation officers were tasked with showing reasonable suspicion of criminal activity before visiting a probationer at his home, "supervision would become effectively impossible." United States v. LeBlanc, 490 F.3d 361, 369 (5th Cir. 2007).

¶ 31. There is one decision that considers the validity of a home visit condition under a state constitution. In Moody, the Montana Supreme Court considered a challenge by a defendant convicted of assault on a police officer, driving while intoxicated, and driving without insurance that a probation condition requiring her to keep her home "open and available for the probation . . . officer to visit" violated Article II, Section 11 of the Montana Constitution. 148 P.3d at 666. The defendant argued that a home visit is a search and a mandatory visit would violate her right to be free from unreasonable search and seizure. Id. at 665. The Montana high court applied three factors to determine whether a visit constitutes a search: (1) the defendant's reasonable expectation of privacy; (2) whether society recognizes that expectation as objectively reasonable and; (3) the nature of the State's intrusion. Id. at 666. In evaluating the first factor, the court determined that a convicted felon cannot have an actual expectation of privacy that would preclude home visits when she is "granted probation on a clearly expressed condition, of which she is 'unambiguously' aware, that she make her home open and available for the probation officer to visit." Id. To the second, the court concluded that even if such an expectation were to exist, it would be unreasonable, as home visits properly ensure felons are abiding by conditions of probation, thereby addressing the pervasive problem of recidivism. Id. Finally, to the third factor, the court reasoned that the visits are not intrusive but are merely a "commonly imposed condition of probation which allow the probation officer to determine whether [a probationer] is

16

abiding by the conditions of probation and thus serve to protect the safety and welfare of society." Id. at 666. The court held that home visits do not qualify as searches, id. at 667; rather, they "operate as an important check on a probationer's rehabilitation efforts." Id. at 665. However, the court cautioned that because visits are not searches, officers "may not open drawers, cabinets, closets or the like or rummage through a probationer's belongings." Id. at 667.

¶ 32.   Although defendant's conviction here is for a misdemeanor, we are persuaded by the reasoning of the state and federal courts that have considered the question that a home visit is not a search and a home-visit requirement does not afoul of the Vermont or Federal Constitution search and seizure provisions.   A home-visit condition is a legitimate tool of probation administration and is valid.   We uphold probation condition J.   We want to be clear, however, that we are ruling only on the validity of the condition and not on the use of any evidence a probation officer may acquire while engaged in a home visit.   Any issues in the latter category are beyond the scope of this opinion.

¶ 33.   Finally, defendant argues condition L, which states that he must not buy, have, or use any regulated drugs unless prescribed by a doctor, has no relationship to his offense, rehabilitation, or public safety.   Defendant complains that there was no evidence that his offense had "anything to do with drugs or alcohol", that substance abuse is a "problem" for defendant, or even that he "uses drugs or alcohol at all."   The State responds that Putnam upheld the identical condition in a case where there was no relationship between the conviction and the conduct prohibited by the condition.

¶ 34.   We agree with the State.  Putnam considered the same condition and held:

> A condition that forbids criminal conduct is valid. See State v. Whitchurch, 155 Vt. at 137, 577 A.2d at 692 (explaining that probation condition is valid unless it has no relationship to underlying crime, relates to conduct which is not itself criminal, and requires or forbids conduct that is not reasonably related to

17

future criminality). There was no abuse of discretion insofar as the purchase, possession, or use of regulated drugs is unlawful unless specifically authorized by law. See 18 V.S.A. § 4205 (prohibiting person from manufacturing, possessing, selling, prescribing, administering, dispensing, or compounding any regulated drug except as authorized). While there are particular circumstances in which an individual may possess regulated drugs, see id. § 4203, these are limited and there is no evidence to show that they relate to defendant's situation. Because the condition precludes conduct that is criminal, the trial court was not required to find a reasonable relationship between defendant's conviction and the condition.

2015 VT 113, ¶ 56. We cannot distinguish this case from Putnam. Accordingly, we uphold condition L.

Affirmed as to defendant's conviction and conditions H, J, and L. Conditions C, D, E, K, M, and P are stricken. Condition I is remanded to add an appropriate standard for exercise of the probation officer's discretion. Condition 31 is remanded to be amended consistent with this opinion.

FOR THE COURT:

_____

Associate Justice