**VERMONT SUPREME COURT**
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.       24-AP-172



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

AUGUST TERM,   2025

State of Vermont v. Kelly Burket\*

}   APPEALED FROM:
}   Superior Court, Chittenden Unit,
}   Criminal Division
}   CASE NO. 23-CR-06955
    Trial Judge: Kevin W. Griffin

In the above-entitled cause, the Clerk will enter:

Defendant Kelly Burket appeals his conviction for simple assault, as well as four of the probation conditions imposed by the court at sentencing.  We strike a portion of one of the conditions but otherwise affirm.

In June 2023, defendant was charged with one count of simple assault in violation of 13 V.S.A. § 1023(a)(1).  The information alleged that in May 2023, defendant "purposely caused bodily injury to another, to wit: pepper spraying [the complainant]."  At trial in June 2024, the complainant testified that on the morning of the incident, he went to a local paint store to get supplies for his work as a carpenter.  He parked his truck and got out, and "someone was hollering at [him] about parking on the sidewalk."  He identified the person as defendant.  Defendant told the complainant that he was parking on the sidewalk, and the complainant said that he wasn't.  Defendant then pulled out a can of mace and sprayed the complainant in the face, causing him severe pain.  The complainant said that he did not threaten defendant or chase after him, and was not holding a weapon.  He did not know defendant before this incident.

The owner of the paint store testified that the complainant, whom he had known for years, came into the store "distraught" and did not look well.  He called the police at the complainant's request.  The store owner subsequently shared the store's surveillance video recording of the incident with police.  The video was admitted into evidence and played for the jury.  A police officer who responded to the store owner's call testified that when defendant was located, he had pepper spray in his backpack, which police seized as evidence.  When police interviewed defendant, he admitted that he sprayed the complainant but claimed that he did so in self-defense.

Defendant testified that as the complainant was parking his truck, he flipped defendant off and threatened to kill defendant. Defendant testified that the complainant appeared to be "mess[ing] with something either on the seat or the floor" of his truck. Defendant testified that "I thought I was being entrapped in some kind of way here, and it just all—it was all bad news." The complainant got out of his car and started coming toward defendant, and defendant sprayed him with mace. On rebuttal, the complainant denied flipping off defendant or saying that the complainant would end up dead and stated that he did not have a weapon in his vehicle.

The jury found defendant guilty of simple assault. The court imposed a sentence of ten days to three months, all suspended, with a one-year term of probation. This appeal followed.

Defendant first argues that the court erroneously omitted the specific "to wit" language that was contained in the information charged by the State in the court's instruction to the jury on the element of causation. Defendant argues that the omission improperly reduced the State's burden of proof on that element. See State v. Kolibas, 2012 VT 37, ¶ 18, 191 Vt. 474 ("[W]hen the information clearly states the conduct upon which the State relies in presenting its case, the State has the burden to prove this conduct to obtain a conviction."). Defendant concedes that he did not object to the court's jury instruction on this basis but argues that the omission was plain error.

"When reviewing alleged plain error in a jury instruction, we determine whether there was obvious error affecting the defendant's substantial rights, thereby resulting in prejudice to the defendant and seriously affecting the fairness or integrity of the judicial proceedings." State v. Nicholas, 2016 VT 92, ¶ 13, 203 Vt. 1. Jury instructions will be upheld "[i]f the charge, taken as a whole and not piecemeal, breathes the true spirit of the law, and if there is no fair ground to say that the jury has been misled." State v. Gokey, 136 Vt. 33, 36 (1978).

We see no error here, let alone plain error. The jury instructions as a whole make clear that the State had to prove that defendant purposely caused bodily injury to the complainant by the specific means of pepper spraying him, and the court did not suggest that the jury could find causation by a different means. The trial court instructed the jury as follows:

> The State has charged [defendant] with simple assault as follows: that [defendant], in the County of Chittenden, at Burlington, on or about May 31st, 2023, purposely caused bodily injury to another, to wit pepper spraying [the complainant].

> Every crime is made up of essential elements. Before [defendant] can be found guilty of the charge, the State must have proven each of the essential elements beyond a reasonable doubt. So in this case, the essential elements are that on the date and the place alleged, one, that [defendant]; two, caused bodily injury to [the complainant] by pepper spraying him; and, three, he did so purposely. . . .

The second essential element is that [defendant] caused bodily injury to [the complainant]. The term "bodily injury" means any physical pain, illness or any impairment of physical condition. T[o] cause bodily injury means that [defendant's?] acts produced bodily injury to [the complainant] in a natural and continuous sequence, unbroken by any efficient intervening cause. . . .

Here, the State alleges that [defendant] purposely caused bodily injury to [the complainant] by pepper spraying him. All of the elements of the offense must have been present at the same time.

These instructions, viewed as a whole, properly informed the jury of the State's burden. The court repeatedly stated that the State had to prove that defendant purposely caused bodily injury to the complainant by pepper spraying him. The State did not present evidence to suggest that defendant harmed the complainant by some other method such that the jury might have been confused on this point. And, although defendant asserted below that the State had not proved defendant used pepper spray specifically, defendant admitted that he used "mace" and the uncontested testimony at trial was that pepper spray, mace, and oleoresin capsicum or "OC" were interchangeable terms. Thus, the omission of the "to wit" language from the description of the second element was not likely to have misled the jury into thinking that it could find defendant guilty for causing bodily injury to the complainant in some way other than pepper spraying him. We therefore see no error.

Defendant also challenges certain probation conditions imposed by the court. Defendant's conditions included condition B, requiring defendant to report any changes in his address, telephone number, or email address to his probation officer within twenty-four hours; condition C, requiring defendant to notify his probation officer within seventy-two hours if he was arrested or given a citation; condition D, requiring defendant to allow his probation officer to visit him at reasonable times wherever he was staying; and condition 14, requiring defendant to sign releases so that his probation officer could see the results of any testing or urinalyses taken by defendant in connection with court-ordered counseling or mental-health treatment. Defense counsel objected to these conditions,[*] arguing that there was no need for defendant to report address changes or citations within such short timeframes or to allow probation officers to enter defendant's home, and that the portion of the condition regarding urinalyses was not appropriate given the lack of any evidence of substance abuse. The court declined to modify the conditions.

A sentencing court may impose such probation conditions "as the court in its discretion deems reasonably necessary to ensure that the offender will lead a law-abiding life or to assist the offender to do so." 28 V.S.A. § 252(a). We review probation conditions for abuse of discretion. State v. Moses, 159 Vt. 294, 297 (1992). "The burden of proof is on the party alleging abuse, and that party must show that the court failed to exercise its discretion or did so for reasons clearly untenable or to an extent clearly unreasonable." State v. Putnam, 2015 VT

---

[*] Defendant also objected below to the imposition of conditions E and F but does not appear to challenge these conditions on appeal.

113, ¶ 44, 200 Vt. 257 (quotation omitted).  The trial court is not required to make particularized findings regarding each condition; rather, this Court looks to "whether the record supports the court's exercise of its discretion."  Id. ¶ 45.

On appeal, defendant argues that it was unnecessary to require him to report changes in his address or citations to his probation officer so quickly, or to allow the probation officer to visit him at home upon request.  We conclude that the court acted within its discretion in imposing conditions B, C, and D as written.  The court explained that it imposed these conditions to allow defendant to be supervised in the community and to address public safety, because defendant's behavior was "bizarre" and his statements indicated that he "would probably do it again if presented with the same set of circumstances."  The court further explained that it was "concerned about the type of behavior that led to the assault on this individual," and wanted the Department of Corrections to be able to keep track of defendant.  The conditions imposed by the court were reasonably related to these goals.  See id. ¶ 48 (upholding conditions that defendant notify probation officer within forty-eight hours of arrest or citation or if he changed his address or moved, where court found conditions appropriate to manage defendant's unusual behavior and angry outbursts and curtail his interactions with law enforcement).  Defendant has failed to demonstrate that the timeframes for reporting changes were so onerous that it would not be reasonable to expect him to comply.  As for the home-visit condition, "[t]he trial court could reasonably conclude that defendant's probation officer needs to know where defendant is living and working to understand defendant's environment, to visit with defendant, and to identify any impediments to successful rehabilitation."  Id.; see State v. Levitt, 2016 VT 60, ¶ 32, 202 Vt. 193 ("A home-visit condition is a legitimate tool of probation administration and is valid."); 28 V.S.A. § 252(b)(10) (stating court may impose condition requiring defendant to "[p]ermit the probation officer to visit the offender at reasonable times at his or her home or elsewhere").

Defendant argues in his appellate brief that the home-visit provision violates his constitutional right to be free from unreasonable governmental intrusions into the privacy of his home.  Defendant did not raise this argument below, and the court's failure to consider it sua sponte was not erroneous because we have expressly upheld the home-visit condition against such a challenge.  See Levitt, 2016 VT 60, ¶ 32 (rejecting claim that home-visit condition violates search-and-seizure provisions in Vermont or U.S. Constitutions).

Finally, defendant argues that the court erred in denying his request to strike the urinalysis language from condition 14 because it was not reasonably related to his offense.  Condition 14 states:

> You must sign any required waivers or releases and allow any treatment or counseling provider to tell your probation officer and the Court about your attendance and participation in the counseling or treatment, and about the results of any testing or urinalyses taken by you in connection with the counseling or treatment ordered by the Court.

The State concedes that the implicit requirement that defendant submit to urinalysis should be stricken because there is no indication that defendant has a history of drug use or that drugs were

involved in his offense, and it is uncertain whether defendant would be prescribed medication as part of his court-ordered mental health screening. We therefore strike the "or urinalyses" language from condition 14. See State v. Nash, 2019 VT 73, ¶ 24, 211 Vt. 160 (striking condition requiring random urinalysis because it had no relationship to defendant's conviction, history, or characteristics).

The language "or urinalyses" in condition 14 is stricken from defendant's probation order. Defendant's conviction and sentence are otherwise affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

Harold E. Eaton, Jr., Associate Justice

Nancy J. Waples, Associate Justice