NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 13

No. 2016-221

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, |
| | Criminal Division |
| | |
| Shawn Bellanger | June Term, 2017 |

David A. Howard, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew F. Valerio, Defender General, and Rebecca Turner, Appellate Defender, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **CARROLL, J.** Defendant Shawn Bellanger appeals a jury verdict finding him guilty of aggravated sexual assault of a child under 13 V.S.A. § 3253a(a)(8) and lewd or lascivious conduct with a child under 13 V.S.A. § 2602. On appeal, defendant raises arguments related to the jury instructions, the sufficiency of the State's evidence, and the prosecutor's closing argument. We affirm.

¶ 2. Defendant and victim D.H.'s mother lived together for approximately eighteen months. Approximately one month after the two separated and ceased contact, D.H. disclosed to her mother that defendant had forced her to perform oral sex on him. During an interview with police following this disclosure, D.H. stated that defendant had, on several separate occasions, forced her to perform oral sex; she also described defendant having both digital and oral contact with her vulva. D.H. was between nine and ten years old at the time of these incidents.

¶ 3.    The State subsequently charged defendant with five offenses: (1) aggravated sexual assault on a victim under age thirteen in violation of 13 V.S.A. § 3253(a)(8); (2) aggravated sexual assault repeated in violation of 13 V.S.A. § 3253(a)(9); (3) aggravated sexual assault of a child repeated in violation of 13 V.S.A. § 3253a(a)(8); (4) lewd or lascivious conduct with a child in violation of 13 V.S.A. § 2602(a)(1); and (5) voyeurism in violation of 13 V.S.A. § 2605(b)(1). The State dismissed the first two counts on the day of trial, and proceeded with only the three latter charges. Under 13 V.S.A. § 3253a(a)(8), aggravated sexual assault of a child occurs when a person over eighteen subjects a victim under sixteen to "repeated nonconsensual sexual acts" as either "part of the same occurrence" or "part of the actor's common scheme and plan." Section 2602(a)(1) prohibits "commit[ting] any lewd or lascivious act upon or with the body, or any part or member thereof, of a child under the age of 16, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of [the actor] or of such child." Section 2605(b)(1) prohibits intentionally viewing or recording "the intimate areas of another person without that person's knowledge and consent."

¶ 4.    During defendant's trial, the jury heard testimony from D.H.'s mother describing D.H.'s initial disclosure and from D.H. regarding the incidents alleged. D.H. testified that defendant had sexual contact with her "[m]ore than one time." She testified that defendant "put his private in [her] mouth" in "certain places," namely in the bathroom, in D.H.'s mother's room, and in D.H.'s mother's closet. She also described incidents wherein defendant had tongue-to-vulva contact with her, and both finger-to-vulva contact and penis-to-vulva contact with her. D.H. disclosed this last incident for the first time at trial—she had not previously disclosed this incident to her mother or to law enforcement investigators.

¶ 5.    The jury convicted defendant of both aggravated sexual assault of a child under 13 V.S.A. § 3253a(a)(8) and lewd or lascivious conduct with a child under 13 V.S.A. § 2602. Defendant was acquitted of the last charged offense, voyeurism. Following the guilty verdicts,

2

defendant was given an aggregate sentence of imprisonment of twenty-seven years to life. This appeal followed.

¶ 6. Defendant outlines four separate arguments—two related to the court's jury instructions, a third related to the sufficiency of the State's evidence on one element of the aggravated sexual assault charge, and a fourth related to the prosecutor's closing argument. Defendant's first and final arguments can be addressed as distinct claims of error, but defendant's second and third arguments must be addressed together.

## I. The Unanimity Instruction

¶ 7. We begin with defendant's first argument related to the jury instructions: that the trial court's unanimity instruction did not instruct the jury that to convict defendant for aggravated sexual assault of a child under 13 V.S.A. § 3253a(a)(8), the jurors must agree not only that two or more instances of sexual contact occurred between defendant and the victim but also must agree as to which specific acts occurred. As mentioned above, § 3253a(a)(8) requires the State to prove—and the jury to find—"[t]he victim is subjected by the actor to <u>repeated</u> nonconsensual sexual acts as part of the same occurrence or the victim is subjected to <u>repeated</u> nonconsensual sexual acts as part of the actor's common scheme and plan." (Emphases added.) Thus, conviction under § 3253a(a)(8) is predicated on at least two acts, either as part of one continuous occurrence or as part of the defendant's common scheme and plan.

¶ 8. We review jury instructions not in isolation but as a whole. <u>State v. Levitt</u>, 2016 VT 60, ¶ 13, 202 Vt. 193, 148 A.3d 204; <u>State v. Herrick</u>, 2011 VT 94, ¶ 18, 190 Vt. 292, 30 A.3d 1285. In this case, the trial court instructed jurors as follows:

> For a guilty verdict on this count, you must all agree to more than one of the described sexual acts happening. You can all agree to more than two, but you must all agree to at least more than one. You may find more than one act of different types occurred or more than one of the same type of act occurred.

3

The court defined a sexual act as conduct "consisting of contact between the penis and vulva, the penis and anus, the mouth and penis, the mouth and vulva, or any intrusion, however slight, by any part of a person's body or any object, into the genital or anal opening of another." Defendant argues that this instruction required jurors to unanimously agree that at least two sexual acts occurred, but did not require jurors to unanimously agree on which specific acts formed a factual basis for conviction under § 3253a(a)(8). The court gave no other instruction regarding unanimity related to the charge for aggravated sexual assault of a child. On this basis, defendant argues that jurors could have misunderstood the unanimity requirement and not agreed on the separate acts, resulting in a conviction without specific unanimity.

¶ 9. The Vermont Constitution requires that a criminal conviction will follow from only a unanimous verdict. Vt. Const. Ch. I, art. 10 ("[I]n all prosecutions for criminal offenses, a person hath a right to . . . a speedy public trial by an impartial jury . . . without the unanimous consent of which jury, the person cannot be found guilty . . . ."); see also V.R.Cr.P. 31(a) ("The verdict shall be unanimous."). To meet the unanimity rule, Vermont practice has generally required that "where there is evidence of more than one act that would constitute the offense charged, the State must specify the act for which it seeks a conviction." State v. Gilman, 158 Vt. 210, 215, 608 A.2d 660, 664 (1992); see also State v. Bailey, 144 Vt. 86, 98, 475 A.2d 1045, 1052 (1984), abrogated on other grounds by State v. Manning, 2017 VT 90, __ Vt. __, __ A.3d __. In a recent decision this Court refined that rule, noting that most courts follow the either/or rule for multiple-acts cases[1] such as this one, which "requires either the election of a single act as a basis for the charged offense or an instruction requiring the jury to be unanimous in determining which act supports a conviction." State v. Nicholas, 2016 VT 92, ¶ 22, __ Vt. __, 151 A.3d 799. Under this rule as explained in Nicholas, a specific unanimity instruction is still not always necessary. See id. ¶¶ 23-

---

[1] "A multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." State v. Celis-Garcia, 344 S.W.3d 150, 155-56 (Mo. 2011) (en banc).

4

"The critical inquiry is whether either party has presented evidence that <u>materially</u> distinguishes any of the alleged multiple acts from the others." <u>Id</u>. ¶ 23 (quoting <u>People v. Cooks</u>, 521 N.W.2d 275, 279 (Mich. 1994)).

¶ 10. In essence, defendant argues that this case falls within the <u>Nicholas</u> rule—that the State's evidence materially distinguished between the several bad acts alleged and that, therefore, a specific unanimity instruction was necessary.[2] On this point, we agree with defendant. The State presented evidence from which the jury could have found multiple separate instances of sexual contact between defendant and D.H. D.H. testified that defendant had sexual contact with her more than once. She described four kinds of contact; including mouth-to-penis, mouth-to-vulva, finger-to-vulva, and vaginal penetration. She described at least three separate incidents involving these four kinds of contact in great detail: one involving penis-to-mouth contact, a second involving mouth-to-vulva contact, and a third involving both finger-to-vulva contact and attempted vaginal penetration. For each of these occurrences, she described the location of the incident and the sequence of events, including details regarding defendant's specific actions during each incident. The locations of the instances varied, with separate instances of contact occurring in D.H.'s mother's room, her mother's closet, and the home's bathroom. D.H. also testified that some of the types of sexual contact described occurred on other occasions as well.

¶ 11. This is not a case in which "generic" evidence was presented of a multitude of more or less indistinguishable acts of sexual abuse over a period of time. See <u>People v. Jones</u>, 792 P.2d

---

[2] Defendant also argues that the lack of a specific unanimity instruction in this case violates the Sixth Amendment of the U.S. Constitution. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed . . . ."). The U.S. Supreme Court has implicitly held that, even though the Sixth Amendment requires juror unanimity in federal criminal trials, the Sixth Amendment unanimity guarantee does not extend to criminal trials in state courts. See <u>Apodaca v. Oregon</u>, 406 U.S. 404 (1972); <u>Johnson v. Louisiana</u>, 406 U.S. 356 (1972). A recent decision suggests this ruling is still good law. See <u>McDonald v. City of Chicago</u>, 561 U.S. 742, 766 n.14 (2010) ("The Court has held that although the Sixth Amendment right to trial by jury requires a unanimous jury verdict in federal criminal trials, it does not require a unanimous jury verdict in state criminal trials."). Thus, the unanimity requirement applicable to defendant's case is derived from the Vermont Constitution, not the Federal Constitution.

643, 650 (Cal. 1990) (en banc) (noting that election or instruction "can help focus the jury on the same specific act where evidence of several distinct acts has been elicited," but "neither an election nor a unanimity instruction is very helpful where the victim is unable to distinguish between a series of acts, any one of which could constitute the charged offense.").[3] The State argues that the evidence presented was not materially distinguishable for purposes of the Nicholas rule because the pattern of circumstances surrounding each incident was similar or the same. For example, D.H. testified that each incident occurred when defendant was responsible for caring for her and her siblings, and that the incidents occurred after defendant messaged D.H. through his phone to tell her to go to the home's second floor. We do not disagree that the external circumstances of each incident followed the same pattern, but Nicholas's reference to materially indistinguishable

---

[3] We readily acknowledge that it is extremely difficult to isolate the degree of evidentiary specificity necessary to trigger a specific unanimity instruction in child sexual abuse cases. Several courts in other states have carefully considered this issue, the resolution of which involves balancing a defendant's due process right to a unanimous jury verdict against the practical difficulties of eliciting detailed testimony from a child alleging trauma. See, e.g., Cooksey v. State, 752 A.2d 606, 615-16 (Md. 2000) (collecting cases). The California Supreme Court has suggested that this problem increases with the frequency of the abuse perpetrated on a victim, meaning that the child's evidence is more likely to be generic if the child is frequently abused over a long period of time than would be the case for a victim molested a small number of times:

> Multiple sex offenses committed by adults upon immature and inarticulate children over a long period of time are very likely to result in an amalgamation of the crimes in the child's mind. . . . Where the number of offenses is so numerous even an adult would not be able to count them, the child's testimony will often be reduced to a general, and customarily abbreviated, recitation of what happened on a continuing basis.

Jones, 792 P.2d at 653-54 (quotation omitted).

To deal with this problem, some states have enacted "continuing offense" statutes. For example, in California "[a]ny person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years" may be prosecuted for continuous sexual abuse of a child. Cal. Penal Code § 288.5(a) (West). This statute specifically states that to convict the jury "need unanimously agree only that the requisite number of acts occurred not on which acts constitute the requisite number." Id. § 288.5(b). In the absence of such a statute in Vermont, trial courts should err on the side of requiring specific unanimity in child sex abuse cases.

6

evidence is not directed at the externalities of an alleged offense but, instead, the alleged offense itself. See State v. Voyles, 160 P.3d 794, 800 (Kan. 2007) (holding case involved multiple acts because charged conduct included offenses occurring at different times and different locations, "demonstrating acts which are separate and distinct from each other," despite similarity in defendant's pattern of conduct before and after offenses and sameness of sexual acts involved). Thus, because the State's evidence, in the form of D.H.'s testimony, distinguished between the details of various isolated incidents of sexual contact, the evidence was sufficiently materially distinguishable to enable jurors to isolate the specific instances of sexual contact that they found formed the factual basis for aggravated sexual assault of a child. Furthermore, the State did not elect which of the alleged acts should serve as a basis for the violation of § 3253a(a)(8). Thus, in this case, under Nicholas, a specific unanimity instruction should have been given to ensure that the jury as a whole convicted based on the same two or more acts. But this is not the end of our inquiry. Having found error in the omission of a specific unanimity instruction, we next consider whether this error rises to the level of reversible error on the facts of this case. We conclude that it does not.

¶ 12.    Defendant argues that an objection to the jury instructions was properly preserved and that our review should proceed under the harmless error standard. The State disputes this argument, advocating instead for plain error review because any objection was not specific to the unanimity question presented on appeal. The appropriate standard in this case is plain error. In order to preserve an objection to a jury instruction, a defendant must not only object to the instruction with specificity in the charge conference but also must renew that objection "before the jury retires to consider its verdict, stating distinctly the matter to which objection is made and the ground of the objection." V.R.Cr.P. 30(b); see also State v. Hinchliffe, 2009 VT 111, ¶ 33, 186 Vt. 487, 987 A.2d 988 (noting purpose of V.R.Cr.P. 30 is "to give the trial court one last opportunity to avoid an error" (quotation omitted)). When an objection to a jury instruction is

unpreserved—and the trial court has not had its due opportunity to avoid error—we review the claim on appeal for plain error. Levitt, 2016 VT 60, ¶ 6.

¶ 13. In the charge conference in this case, defendant, the State, and the court discussed revising the jury instructions to ensure that jurors understood that they must agree that at least two acts occurred in order to convict for aggravated sexual assault under 13 V.S.A. § 3253a(a)(8). They also discussed ways of ensuring that jurors understood that they need not base conviction on two different types of conduct, but could convict if they found two or more instances of the same kind of conduct, including the possibility of using a jury verdict form enabling jurors to check off the instances of sexual contact they found occurred. The trial court edited the original draft jury instructions to clarify that the jurors must agree that at least two separate acts had occurred, though they could also agree on the occurrence of more than two acts. The court did not give jurors a verdict form. Nor, as explained above, did the court instruct jurors that they must agree as to which specific acts formed the factual basis for conviction of aggravated sexual assault. Following the trial court's reading of the instructions to the jury, defendant made a few specific objections to some portions of the instructions and then stated that he was relying on his prior arguments regarding other earlier objections. Defendant did not make a specific objection to the court's failure to instruct the jurors that they were required to be unanimous on the particular acts forming a factual basis for conviction.

¶ 14. Even if defendant's objection to the jury instruction during the charge conference could be considered an objection on the ground that a specific unanimity instruction was needed, the trial court's final instruction clearly did not reflect the court's understanding of that objection. Given that the purpose of preservation's requirement for specific post-charge objections is to give the trial court its due "one last opportunity to avoid an error," we cannot say that defendant's blanket renewal was sufficient under these circumstances to allow the court a chance to correct

8

remaining defects in the instructions. Hinchcliffe, 2009 VT 111, ¶ 33 (quotation omitted).[4] Put simply, the omission of a specific unanimity instruction indicates that the trial court did not understand defendant's argument in the charge conference to be predicated on the need for such an instruction. For this reason, defendant needed to clearly notify the trial court that a specific unanimity instruction was required so that the trial court could then take any necessary reparative action. Because defendant did not give the trial court a final opportunity to correct its mistake, defendant's objection is unpreserved and our review is for plain error. V.R.Cr.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

¶ 15.    A plain error review of jury instructions requires us to "examine the instructions in light of the record evidence as a whole" and decide whether the error defendant raises "would result in a miscarriage of justice." Herrick, 2011 VT 94, ¶ 18. This inquiry involves four questions: whether there is error, whether that error is obvious, whether that error affects a defendant's substantial rights and has led to prejudice, and whether that error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. In other words, to find plain error, "there must be a reasonable probability that the error affected the outcome of the trial." United States v. Marcus, 560 U.S. 258, 262 (2010) (emphasis added). An error is reasonably likely to have affected the outcome of a trial when it is reasonably likely that some jurors could have found that some of the alleged acts occurred and other jurors could have found that other of the alleged acts occurred. See, e.g., In re Carter, 2004 VT 21, ¶ 24, 176 Vt. 322, 848 A.2d 281 ("To

---

[4]  The recent revision of V.R.Cr.P. 30 was briefly discussed in oral argument before this Court. Under the revised rule, preservation requires repetition only where the instructions as actually delivered to the jury differ from those on the record at the charge conference. V.R.Cr.P. 30 (effective Apr. 10, 2017). As the revised Rule 30(c) states: "If any portion of the charge read to the jury differs in substance from the last version approved by the court on the record at the charge conference to which a party has objected in conformity with this rule, the party must object to that portion of the charge before the jury retires in order to preserve objection." Defendant's trial occurred before revision of the rule, and thus we consider preservation of his objection to the juror instructions under the previous version of the rule and our associated caselaw.

demonstrate prejudice, petitioner would need to show that it was likely that some jurors found that there were threats to the victim but not to her family while other jurors found just the opposite."). Defendant bears the burden of demonstrating that there was more than just a "logical possibility" that the jury differed on the factual basis underlying defendant's aggravated sexual assault of a child conviction—the likelihood of a nonunanimous verdict must be "reasonable." See Nicholas, 2016 VT 92, ¶ 26 (quotation omitted).

¶ 16. As we have explained before, this is "a very high bar." Herrick, 2011 VT 94, ¶ 18. Defendant has not reached that bar in this case. Put simply, while there is a possibility that jurors differed on the factual basis for defendant's conviction, it is neither logically nor reasonably likely that the jurors would have reached a different verdict had the trial court given a specific unanimity instruction.

¶ 17. In short, defendant has not demonstrated that the lack of a specific unanimity instruction gave rise to any prejudice. Our reasoning on this point rests on the defense presented below. During the charge conference, defense counsel conceded that the defense was "all or nothing." He went on to state that jurors were either "going to believe the child or they're not. If they believe the child, I can't see them not believing all the acts." While the State presented testimony from D.H.'s mother and the investigating officer, the State's case centered on D.H.'s testimony concerning the offenses defendant allegedly committed. The State presented no extrinsic evidence to accompany this testimony. Therefore, the jury's verdict could have rested only on its determination as to D.H.'s credibility—and, given the jury's verdicts convicting defendant, the jurors likely found D.H. credible.

¶ 18. Courts in several states have held that where a defendant presents a blanket defense, which relies on undermining witness credibility and arguing that none of the alleged acts occurred, a different verdict is "even if a logical possibility, not a reasonable possibility." Nicholas, 2016 VT 92, ¶ 26 (quotation omitted) (collecting cases). Where the defense raises only a single issue— witness credibility—and the jury convicts despite this defense, then it is reasonable to conclude

10

that jurors believed all of the witness's testimony and their verdict would not have been different even if a specific unanimity instruction was given. Compare State v. Hill, 26 P.3d 1267, 1275 (Kan. 2001) ("By the jury's rejection of [defendant's] general denial, we can unequivocally say there was no rational basis by which the jury could have found that [defendant] committed one rape but did not commit the other."), abrogated on other grounds by Voyles, 160 P.3d at 794, with Celis-Garcia, 344 S.W.3d at 159 (granting new trial in multiple acts case where court did not give specific unanimity instruction and defendant "relied on evidentiary inconsistencies and factual improbabilities respecting each specific allegation of hand-to-genital contact [which] makes it more likely that individual jurors convicted [defendant] on the basis of different acts"). Therefore, we conclude that in this case, though omission of a specific unanimity instruction was error, it was not reversible error. The defense did not distinguish between the multiple alleged acts, relied solely on undermining D.H.'s credibility in a general way, and jurors were therefore not reasonably likely to reach a different verdict had a specific unanimity instruction been correctly given.

II. The Nonconsent Instruction and the Sufficiency of the State's Evidence

¶ 19. We turn now to defendant's next arguments: (1) that the trial court erred by instructing jurors they could presume nonconsent on the basis of D.H.'s age at the time of the alleged offenses; and (2) that the State failed to present sufficient evidence on a necessary element of § 3253a(a)(8)—namely, that defendant and D.H. were not married to each other. Resolution of these two arguments is comingled and begins with recounting the initial charge against defendant and the way that charge was presented to the jury.

¶ 20. First, § 3253a(a) states that "[a] person commits the crime of aggravated sexual assault of a child if the actor is at least 18 years of age and commits sexual assault against a child under the age of 16 in violation of section 3252" of Title 13 and one aggravating factor is present. Thus, for conviction under § 3253a the State must prove each element of that statute, including an aggravating factor, and also must satisfy the elements necessary for conviction under § 3252.

11

Section 3252, sexual assault, lists five general provisions under which a defendant can be charged.

Two of these subsections are relevant here:

> (a) No person shall engage in a sexual act with another person and compel the other person to participate in a sexual act:
>   (1) without the consent of the other person . . . .
>
> . . .
>
> (c) No person shall engage in a sexual act with a child who is under the age of 16, except . . .
>   (1) where the persons are married to each other and the sexual act is consensual; or
>   (2) where the person is less than 19 years old, the child is at least 15 years old, and the sexual act is consensual.

Id. § 3252(a), (c). The State charged defendant under § 3253a(a)(8) as follows:

> [Defendant], being at least 18 years of age engaged in a sexual act with a child under the age of 16[,] engaged in a sexual act with another person and compelled the other person to participate in a sexual act without the consent of the other person[,] and the victim was subjected by [defendant] to repeated nonconsensual sexual acts as part of the same occurrence or the victim was subjected to repeated nonconsensual sexual acts as part of the actor's common scheme and plan . . . .

The language of the information indicates that the State incorporated § 3252(a) as the violation of that provision necessary for the charge under § 3253a(a)(8). And, as explained below, during the charge conference, the State expressly stated that it relied on this subsection of § 3252 in its charge and argument against defendant.

¶ 21. During defendant's trial, the court instructed jurors that to convict under § 3253a(a)(8), they had to find that defendant "compelled" D.H. to participate in a sexual act "without her consent" and that he "subjected her to repeated nonconsensual acts as part of the same occurrence or as part of his common scheme and plan." The trial court also instructed jurors they could presume nonconsent if they found D.H. was under the age of sixteen at the time the alleged acts occurred:

> Nonconsensual means that D.H. did not voluntarily agree to engage in a sexual act. However, if you find she was under the age of sixteen years, you do not need to determine if she consented to the

12

conduct in question, because under Vermont law, a person under the age of sixteen years cannot consent to a sexual act. So if you find a sexual act, or acts, occurred with a person under the age of sixteen years, it was nonconsensual as a matter of law. If you find D.H. was under the age of sixteen years, for the consent element it does not matter if the child was a willing participant or not. By law, a child under the age of sixteen years is not legally capable of consenting to a sexual act.

It is undisputed that D.H. was eleven at the time of trial, and that she was between the ages of nine and ten when the alleged acts occurred.

¶ 22.    Defendant argues that inclusion of this mandatory nonconsent inference was error for two main reasons. First, it eliminates from the jury's consideration a required element of § 3253a(a)(8). And second, in some circumstances the nonconsent instruction renders the statute identical to 13 V.S.A. § 3253(a)(9)—a statute that carries a much lower penalty.[5] This, defendant argues, violates the U.S. Constitution's Eighth Amendment prohibition against cruel and unusual punishment because a defendant could be prosecuted under two statutes with different penalties on the basis of the same conduct.

¶ 23.    The court also instructed jurors they must find that D.H. and defendant were not married at the time of the alleged events. The State objected to this instruction, arguing that because the § 3253a charge incorporated § 3252(a), not § 3252(c)—the statutory rape subdivision of the sexual assault statute—a determination that the parties were unmarried was not required.

---

[5]  13 V.S.A. § 3253(a)(9) states that "[a] person commits the crime of aggravated sexual assault if the person commits sexual assault under any one of the following circumstances: . . . [t]he victim is subjected by the actor to repeated nonconsensual sexual acts as part of the same occurrence or . . . the actor's common scheme and plan." The language of this statute is identical to the language of § 3253a(a)(8) but for the latter's requirement that the actor be at least eighteen and the victim be under the age of sixteen, and the necessity of meeting one of the provisions of § 3252, which was met in this case by inclusion of the language in § 3253(a). Section 3253 is punishable by at least ten years imprisonment, which may be lessened to as little as five years if the trial court finds that a downward departure "will serve the interests of justice and public safety" though the sentence may not be suspended, deferred, or served through supervised sentence. Id. § 3253(c)(2). Section 3253a(a)(8) is punishable by a sentence of imprisonment for twenty-five years to life. Id. § 3253a(b). No downward departure is permitted from the statute's twenty-five year minimum, and the sentence "may not be suspended, deferred, or served as a supervised sentence." Id.

13

On appeal, defendant argues that the State did not present sufficient evidence on this element, which defendant reads as required for conviction of the charged offense. The State reiterates its argument below, arguing that this particular element was superfluous and unnecessary to the charge against defendant and that, as such, the quantum of evidence on this element is irrelevant.

¶ 24. We begin with defendant's argument that the nonconsent instruction eliminated an essential element for conviction under § 3253a.[6] We have previously considered this precise argument relative to § 3253(a)(9). See State v. Deyo, 2006 VT 120, 181 Vt. 89, 915 A.2d 249. In Deyo, the defendant was charged with aggravated sexual assault on a thirteen-year-old on the basis of "repeated nonconsensual sexual acts as part of the actor's common scheme or plan." Id. ¶ 2 (quotation omitted). On appeal, he argued that the trial court's instruction to jurors that they could find nonconsent as a matter of law because the victim was under the age of sixteen was error because the instruction relieved the State of its burden to prove an essential element of the crime. We held that the instruction was not error, id. ¶ 17, a conclusion that we also reach here.

¶ 25. As we explained in Deyo, our caselaw has "recognized a minor's inability to consent to sexual relations with an adult." Id. ¶ 15; see State v. Hazelton, 2006 VT 121, ¶ 27, 181 Vt. 118, 915 A.2d 224 ("At the time of this offense, it was long settled under Vermont law that it was legally impossible for an unmarried child under the age of sixteen to consent to sexual acts.");

---

[6] Defendant argues in generalities on appeal that the trial court's nonconsent instruction was error, but it bears mentioning that because of the nature of the charge in this case, the jury was instructed twice that it had to find nonconsent—first for the § 3252 factor—that defendant had sexual contact with D.H. without consent—and second for the § 3253a(a) aggravating factor—that defendant engaged in repeated nonconsensual contact as part of the same occurrence or his common scheme and plan. Defendant argued below that the nonconsent instruction collapsed both of these elements into the lesser included offense of § 3253(a)(8), which penalizes sexual assault committed by a person over the age of eighteen on a person under the age of thirteen but does not require the State to prove nonconsent. Our consideration of this issue addresses the nonconsent instruction in general, without distinguishing between its application to the § 3252(a) element or the § 3253a(a)(8) element. But even if the trial court's instruction reads out the nonconsent provision in the § 3253a(a) aggravating factor in this case, the statute is still not a duplicate of its lesser included offense—the State still needed to prove that defendant's conduct was part of the same occurrence or his common scheme and plan, which is unnecessary under § 3252(a). This language does not lose its meaning simply because the characterization of defendant's conduct as consensual or otherwise is rendered null.

State v. Thompson, 150 Vt. 640, 644, 556 A.2d 95, 98 (1989) ("[C]onsent by a minor is not legally possible."); State v. Clark, 77 Vt. 10, 12, 58 A. 796, 796 (1904) ("Since the person assaulted was under the age of sixteen years, the question of her consent was immaterial."); State v. Sullivan, 68 Vt. 540, 543, 35 A. 479, 479 (1896) ("If the female is under the age of fourteen years, the element of consent is eliminated."). This understanding is derived from the basic principles that "statutes in derogation of the common law are to be construed narrowly" and "where statutes covering a subject are more narrow than the common law, the common law remains in force as to cases outside the scope of the statute." Deyo, 2006 VT 120, ¶ 16. Here, Vermont's statutory rape statute, now codified at 13 V.S.A. § 3252(c), operates to narrowly limit the common law understanding of a minor's capacity to consent by carving out specific exceptions wherein a minor can, conceivably, give legal consent to sexual acts.

¶ 26. At the time of statehood, the English common law presumed that a child under the age of ten was not legally capable of giving consent.[7] See Hazelton, 2006 VT 121, ¶ 28 (citing Coates v. State, 7 S.W. 304, 306 (Ark. 1888), and discussing English statute 18 Eliz., c. 7); see also State v. Tilman, 30 La. Ann. 1249, 1250 (1878) (discussing sources of common law on consent and explaining 4, William Blackstone, Commentaries *212 states law has generally held children under ten cannot legally give consent). As we explained in Hazelton, over time this presumption has been broadened by statute—first to include children under eleven, then children under fourteen, and finally children under sixteen. 2006 VT 121, ¶ 28 (citing 1791 Haswell, p. 294; 1886, No. 63, § 1; 1898, No. 118, § 1). The Legislature later limited this law by adding two statutory exceptions: one under 13 V.S.A. § 3252(c)(1) for married minors, and the other under 13 V.S.A. § 3252(c)(2) for instances where one person is less than nineteen years of age, the other is at least fifteen years of age, "and the sexual act is consensual."

---

[7] Vermont adopted English common law upon becoming a state. See 1 V.S.A. § 271 ("So much of the common law of England as is applicable to the local situation and circumstances and is not repugnant to the constitution or laws shall be laws in this State and courts shall take notice thereof and govern themselves accordingly.").

¶ 27. But the broad presumption remains—a person under the age of sixteen is legally unable to consent unless the person is either married or both parties fall within the age limits of § 3252(c)(2). In Deyo, we explained the interplay of the presumption and the statutory exceptions as follows:

> Here, the statutes covering the subject of consent by minors to sexual activity with adults, while they do describe certain instances in which minors can give consent, do not do away with the common law that does not generally recognize consent by minors to sexual activity. Rather, by specifically enumerating those limited circumstances in which a minor can consent, the Legislature has only reinforced its adherence to the common law. Thus, the most reasonable construction of the statutes is that a minor is legally incapable of consenting to sexual intercourse with an adult except in the very narrow circumstances in which the Legislature has explicitly stated that a minor's consent will be effective.

2006 VT 120, ¶ 16. Deyo's reasoning applies equally to § 3253(a)(9) and § 3253a(a)(8). The understanding that a minor under the age of sixteen cannot legally consent to sexual contact except in the certain statutorily defined circumstances found in § 3252(c) is broadly applicable and not tied to a particular statute's reference to "nonconsensual" sexual acts.

¶ 28. Thus, on the facts of this case, the trial court's nonconsent instruction was not error. It is undisputed that D.H. was between nine and ten at the time of the alleged offenses—even under the Elizabethan understanding of consent and that era's expectations regarding childhood, D.H. would have been presumed to be legally incapable of giving consent. And under the law of this State, coming as it does from an act adopted in 1898, D.H. is also presumed to be unable to consent.

¶ 29. Our resolution of this issue necessarily means that the trial court also correctly required jurors to find that D.H. and defendant were not married. The presumption of nonconsent applies only outside the narrow statutory exceptions. The exception in § 3252(c)(2) cannot apply here because of D.H.'s age, but application of the exception in § 3252(c)(1) for married minors was a relevant consideration for the trial court.

¶ 30. We considered and addressed this issue in Hazelton. In that case, the defendant was charged with two separate counts on the basis of the same act: the first count charged the

defendant with engaging in a sexual act with a person under sixteen to whom he was not married, and the second count charged the defendant with compelling a person to engage in a sexual act without the person's consent. Hazelton, 2006 VT 121, ¶ 23. We held that the defendant could not be convicted of both of these counts on the basis of the same underlying conduct because, essentially, as applied to a victim under the age of sixteen, the counts were identical. As we explained:

> The one statutory difference between the two offenses in effect at the time, that the victim must be unmarried to the offender for there to be a violation of [the first count], is so insubstantial as to be indistinct. When the victim is under sixteen, the gravamen of both charges is that the victim is incapable of consent unless married to the defendant. . . . While the absence of marriage must be affirmatively pled for a charge of statutory rape . . . , the fact of marriage is equally relevant to a charge of compelled sexual assault . . . when the victim is under sixteen, since legislative recognition of a minor's marriage introduces the defense of consent to both charges. Once the issue of a minor's marriage to the accused is raised, under both [the statutory rape and compelled sexual assault statutes], the State has the burden of proving actual lack of consent in either case. In real terms of actual liability, the required allegation of nonmarriage in one offense, but not the other, is meaningless.

Id. ¶ 37. Requiring the State to prove that the parties are unmarried does not come from the language of the charge against a defendant, rather, it arises whenever a defendant is charged with committing nonconsensual sexual acts on a person under sixteen and the court gives an instruction authorizing the jury to presume nonconsent because the child is under sixteen.

¶ 31. In this case, the jury was correctly instructed that it could find nonconsent as a matter of law because D.H. was under sixteen. And the jury was also correctly instructed that, in order to do so, it must find that defendant and D.H. were not married—the need for this instruction did not come from the subsection of § 3252 incorporated into the charge against defendant, as the State argued below, but is the necessary corollary to the nonconsent instruction sought by the State. Stated more simply, the court properly instructed the jury that it could presume that D.H. could not consent to the acts because of her age, but the jury was also required to rule out the marriage

17

exception because the child's age would allow the presumption of nonconsent only if the defendant and D.H. were not married.

¶ 32.    There was ample evidence in this case from which the jury could find that defendant and D.H. were not married.  D.H. testified that she lived with her mother, sister, and brother, and that defendant lived with them for some time and took care of all three children while D.H.'s mother was working.  D.H.'s mother testified that she and defendant dated and subsequently lived together, along with her three children.  D.H.'s mother also testified that she had a sexual relationship with defendant and described the intimate areas of defendant's body.  Finally, D.H.'s mother testified about the end of her relationship with defendant and explained defendant moved out of the home she shared with D.H. and her other two children on the day the relationship ended. While all of this evidence is circumstantial, "[t]he sufficiency of circumstantial evidence to support a conviction is measured against the same standard as all other evidence: it will sustain a conviction if sufficient to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt."  State v. Alers, 2015 VT 74, ¶ 23, 199 Vt. 373, 123 A.3d 825 (quotation omitted).  The evidence described above was clearly sufficient to convince the jury that defendant and D.H. were unmarried and, thus, we see no merit in defendant's argument that the State presented insufficient evidence as to this element.

¶ 33.    We similarly see no merit in defendant's argument that the nonconsent instruction results in any Eighth Amendment violation.  U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.").  To support this argument, defendant cites three cases, two from the U.S. Supreme Court and one from the Georgia Supreme Court, without explanation of how those cases should influence our decision here.  None of these cases supports the conclusion defendant seeks.

¶ 34.    The Georgia case cited by defendant involves facts wildly different from those in this case; there, the seventeen-year-old defendant was convicted of aggravated child molestation after engaging in a consensual sex act with a fifteen-year-old partner.  Humphrey v. Wilson, 652

18

S.E.2d 501, 502-03 (Ga. 2007). The defendant was sentenced to eleven years imprisonment, with ten to serve and one on probation, and was required to register as a sex offender. After the defendant was sentenced, but while he had an appeal pending, the Georgia Legislature amended the statute under which the defendant was convicted, downgrading the offense at issue from a felony to a misdemeanor. Id. at 503-04. The defendant filed a habeas petition arguing that under the new statutory scheme, his sentence constituted "cruel and unusual punishment" in violation of the Eighth Amendment and, as such, could not stand.

¶ 35. The court agreed, explaining that "whether a particular punishment is cruel and unusual is not a static concept, but instead changes in recognition of the evolving standards of decency that mark the progress of a maturing society," and that "[l]egislative enactments are the clearest and best evidence of a society's evolving standard of decency and of how contemporary society views a particular punishment." Id. at 505 (quotations omitted). The court cited Justice Kennedy's concurrence in Harmelin v. Michigan, 501 U.S. 957, 996-1009 (1991) (Kennedy, J., concurring), and Justice O'Connor's plurality opinion in Ewing v. California, 538 U.S. 11, 29-30 (2003) (O'Connor, J., plurality opinion), both of which defendant also cites, for the principle that when considering whether a punishment is cruel and unusual, "courts must bear in mind the primacy of the legislature in setting punishment and seek to determine whether the sentence furthers a 'legitimate penological goal' considering the offense and the offender in question." Humphrey, 652 S.E.2d at 505-06 (quoting Ewing, 538 U.S. at 29 (O'Connor, J., plurality opinion)). "If a sentence does not further a legitimate penological goal, it does not 'reflect [] a rational legislative judgment, entitled to deference,' and a threshold showing of disproportionality has been made." Id. at 506 (alteration in original) (quoting Ewing, 538 U.S. at 30). Concluding that the legislative amendment of the statute in question represented a "seismic shift in the legislature's view of the gravity of oral sex between two willing teenage participants," the court held that the defendant's sentence satisfied no penological goal and was, therefore, grossly disproportionate. Id. at 508.

19

¶ 36.   Humphrey is consistent with Justice Kennedy's Harmelin concurrence and Justice O'Connor's plurality opinion in Ewing.[8]  In the Harmelin concurrence, Justice Kennedy explained that the Eighth Amendment proportionality principle involves several principles—including deference to legislative assessment of proper punitive measures for particular crimes, the equal legitimacy of different penological theories, the federal structure's open embrace of different punitive schemes in different states, and the idea that federal court review should be grounded on "objective factors to the maximum extent possible."  Harmelin, 501 U.S. at 998-1001 (Kennedy, J., concurring) (quotation omitted).  Regarding the first of these factors, Justice Kennedy wrote "[t]he efficacy of any sentencing system cannot be assessed absent agreement on the purposes and objectives of the penal system.  And the responsibility for making these fundamental choices and implementing them lies with the legislature."  Id. at 998.

¶ 37.   The Harmelin concurrence's distillation of caselaw guided Justice O'Connor's Ewing plurality.  Ewing, 538 U.S. at 23-24.  The Ewing decision begins with the principle the Georgia court expressly relied on in Humphrey—that courts engaged in a proportionality analysis should defer to a legislature's "deliberate policy choice" in imposing penalties.  See Ewing, 538 U.S. at 24-28.  When a sentencing scheme is controversial, "[t]his criticism is appropriately directed at the legislature, which has primary responsibility for making the difficult policy choices that underlie any criminal sentencing scheme.  We do not sit as a 'superlegislature' to second-guess these policy choices."  Id. at 28-29.  In essence, the decision concludes that when a sentence

---

[8]   Neither Harmelin nor Ewing involved the legal question at issue here—whether two statutes that penalize the same conduct but carry divergent penalties violate the Eighth Amendment.  In Harmelin, the defendant challenged constitutionality of a sentence of life imprisonment without parole for felony possession of 672 grams of cocaine where the state sentencing scheme made the defendant's sentence mandatory and did not allow consideration of any mitigating factors, such as the number of prior convictions. 501 U.S. at 961.  The Ewing defendant challenged California's three-strikes law, under which he was sentenced to serve twenty-five years to life in prison after a felony conviction that, in turn, followed two prior "serious" or "violent" felony convictions.  538 U.S. at 19-20.

20

has been imposed through legislative action, it is presumed to pass proportionality consideration as long as it serves a "legitimate penological goal." Id. at 29.

¶ 38. None of these three cases dictates the ruling defendant seeks in this case—they dictate exactly the opposite result. Section 3253, Vermont's aggravated sexual assault statute, was enacted in 1977 and has been amended several times, most recently in 2006. This 2006 amendment was part of the Sexual Violence Prevention Act, a far-reaching Act that "restructure[d] . . . sentencing for the most serious crimes of sexual violence." 2005, No. 192 (Adj. Sess.), § 3. In keeping with this purpose, the Act changed the penalty associated with § 3253; before the amendment, a violation of the statute was punishable by "a maximum sentence of life imprisonment" with no minimum term. See 2005, No. 192 (Adj. Sess.), § 10. Currently, a violation of § 3253 is punishable by a term of imprisonment for at least ten years but may be punished by life imprisonment, though in some cases a downward departure to as little as five years imprisonment may be authorized. 13 V.S.A. § 3253(b).

¶ 39. In 2009, the Legislature revisited the topic of sexual violence prevention with an Act adopted in response to a Senate Judiciary Committee report and plan concerning Vermont's response to child sexual abuse. See 2009, No. 1, § 1. This Act amended Title 13 to add § 3253a, aggravated sexual assault of a child. Section 3253a is punishable by a term of imprisonment from twenty-five years to life, with no downward departure permissible. 13 V.S.A. § 3253a(b).

¶ 40. Defendant argues that the penalty associated with 13 V.S.A. § 3253a fails an Eighth Amendment proportionality analysis because the same conduct can constitute an offense under both § 3253a(a)(8) and § 3253(a)(9) when the latter statute is prosecuted on the basis of conduct involving a victim under the age of sixteen. It is worth noting that § 3253a(a)(8) and § 3253(a)(9) are potentially duplicative only when § 3253a is charged as it was in this case—specifically incorporating § 3252(a), which reaches commission of a nonconsensual sexual act, rather than any of the other provisions of § 3252 that could be incorporated instead. But even if the two statutes might be duplicative, this does not render the increased penalty of § 3253a problematic according

21

to the Eighth Amendment analysis of Ewing, Harmelin, and Humphrey. Put simply, those cases counsel deference to legislative sentencing decisions, which represent "deliberate policy choice[s]." Ewing, 538 U.S. at 24. The history outlined above indicates that the Legislature sought to impose stringent penalties in crimes involving the sexual abuse of children, and to that end, adopted § 3253a, which applies only to crimes against children under sixteen. We have explained before that "Vermont law reflects our enhanced concern for the protection and well-being of minors and the gravity we attach to crimes involving the exploitation of minors." State v. Searles, 159 Vt. 525, 528, 621 A.2d 1281, 1283 (1993). The cases defendant cites provide no grounds upon which to conclude that the Legislature's policy choice regarding the sentence for § 3253a runs counter to the Eighth Amendment.

### III. The State's Closing Argument

¶ 41. This brings us to defendant's final argument—that the prosecutor's closing argument improperly invited jurors to go beyond the evidence presented at trial, giving rise to the need for a new trial. We conclude that none of the statements defendant construes as improper rise to the level of reversible error.[9]

¶ 42. Defendant first argues that the prosecutor improperly violated the "golden rule" by inviting jurors to imagine themselves in the position of the victim, D.H. "A golden rule argument—which asks jurors to place themselves in the position of a party—is universally condemned because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on evidence." State v. Scales, 2017 VT 6, ¶ 28, __

---

[9] In a recent decision, we noted that Vermont, unlike some other states, "has not adopted the cumulative error doctrine for reviewing the impact of numerous errors that alone would be harmless but that, when considered together, undermine the fairness of a trial." State v. Webster, 2017 VT 98, ¶ 25 n.3, __ Vt. __, __ A.3d __. In that case, we declined to apply the cumulative error doctrine because neither party briefed the alleged prosecutorial misconduct according to that doctrine. Id. In this case, we similarly decline to consider applying the cumulative error doctrine. Defendant argues that each alleged incident of misconduct, standing alone, provides grounds for reversal and does not argue that the combination of these alleged errors might give rise to reversible error even if each one, considered independently, is harmless.

Vt. __, 164 A.3d 652 (quotations omitted). Defendant points to two statements in particular that he argues invited jurors to imagine themselves in the victim's position. First, the prosecutor stated in reference to D.H.'s demeanor while testifying: "And think about—most people can remember being in fifth grade, or fourth grade, having to do your very first oral report, how incredibly stressful that is. Most people remember it." And later, in reference to D.H.'s description of one of the alleged incidents of sexual contact, the prosecutor reflected "[t]hat's exactly how you would describe it if you were trying to figure it out and you're eleven years old." Defendant analogizes these statements to a statement that this Court found reversible error in Scales. A comparison with the statement at issue in that case shows that the statements contested here were not an invitation to jurors to place themselves in the position of the victim.

¶ 43.　The most fundamental distinction is that in Scales the prosecutor expressly invited jurors to imagine themselves in the place of the victim:

> As adults, no one would want to ever come into court . . . and say, okay, I'm going to talk now about my first sexual experience. . . . Imagine how difficult it would be for an adult, and then put yourself in the eyes of a twelve-year-old child, and how difficult and challenging it would have been for her, and for her to come here, as well.

2017 VT 6, ¶ 26 (emphasis added). We explained that "[t]he longstanding rule in Vermont is that counsel should confine argument to the evidence of the case and inferences properly drawn from it," an obligation that is "particularly essential for prosecutors." Id. ¶ 29 (quotation omitted). We found that the prosecutor's statement was "inflammatory," "appeal[ed] to the sympathies of the jury," and, by implication, invited jurors to drawn inferences based on their own personal experience rather than the evidence presented. Id. ¶ 30. But see Duchaine v. Ray, 110 Vt. 313, 321-23, 6 A.2d 28, 32 (1939) (holding prosecutor's request to jury to "put [themselves] in the place of this plaintiff, and assess damages on that theory" was "highly improper" but not prejudicial because, when considered against field of all evidence, jury's damages award was not "excessive").

¶ 44.    Unlike the statement at issue in <u>Scales</u>, the statements that defendant challenges as a golden rule violation do not overtly invite jurors to place themselves in the victim's position. And when considered within the context of the prosecutor's surrounding argument, the contested argument is identical in sentiment to a statement that we found was not a golden rule violation, and not improper, in <u>State v. Bubar</u>.    146 Vt. 398, 505 A.2d 1197 (1985).    In that case, the prosecutor asked jurors whether they had " 'given any thought to how difficult it was for [the victim] to sit up here and do what she did' by testifying." <u>Id</u>. at 403, 505 A.2d at 1200.   We held that "[t]he prosecutor's argument that it was difficult for the complainant to testify as she did was a permissible argument as to credibility.  It did not . . . violate the rule that the jury cannot be asked to put themselves in the victim's place . . . ." <u>Id</u>. at 403-04, 505 A.2d at 1201.    In this case, the prosecutor's complete statement was as follows:

> So her story—the way the story came out, and the fact that she told what she told in the interview makes perfect sense.  And the fact that it was different here also makes sense.  And think about—most people can remember being in fifth grade, or fourth grade, having to do your very first oral report, how incredibly stressful that is.  Most people remember it.  And here we have a fifth-grade girl who has to give an oral report to this group of strangers on a topic incredibly private.
>
> How difficult it was for her to talk about what was in the bedroom. That was real emotion.  She's not an actress; she's a little girl.  And her demeanor on the stand, above all else, demonstrated the truthfulness of her report.
>
> . . .
>
> She described him putting fingers—and this is another example of her truthfulness.
>
> She was asked in the interview, did the fingers go inside or outside? She had to really think about that.  And as adults, we can all look about that and think, that's a really hard question, inside or outside. And she's like, well, not all the way up inside but kind of inside, and uses kind words like I'm not sure, and it's like kind of inside, not really inside.  That's exactly how you would describe it if you were trying to figure it out and you're eleven years old.

The entirety of the prosecutor's statement here is more or less an invitation to jurors to think about how difficult it was for D.H. to testify. And like the statement in <u>Bubar</u>, the prosecutor's complete statement in this case addresses the victim's credibility—a permissible subject for argument. See <u>State v. Gates</u>, 141 Vt. 562, 567, 451 A.2d 1084, 1086 (1982) ("The credibility of the defendant's alibi witness was certainly fair game for the prosecution."). This is not an invitation to jurors to place themselves in the victim's position, but an argument to jurors explaining that they should find D.H. credible. Thus, these statements do not violate the golden rule.

¶ 45. This is not to say that all credibility arguments are proper. We have, for example, found plain error in a prosecutor's closing where the prosecutor overtly framed statements about witness credibility in terms of his own opinion, those statements "went directly to the heart of the defense," the case turned on credibility, and the prosecutor's conduct demonstrated a "studied purpose to introduce the improper considerations." <u>State v. Ayers</u>, 148 Vt. 421, 425-27, 535 A.2d 330, 333-34 (1987) (quotation omitted); see also <u>State v. Hemond</u>, 2005 VT 12, ¶ 15, 178 Vt. 470, 868 A.2d 734 (mem.) (holding prosecutor's closing not plain error where prosecutor's statements of opinion "appeared sporadically" and "expressed what the prosecutor thought the jury would believe, and did not urge upon the jury the prosecutor's own view as to the guilt of the defendant"); <u>State v. Messier</u>, 146 Vt. 145, 160, 499 A.2d 32, 43 (1985) (holding prosecutor's closing not plain error where prosecutor made six statements framed as his opinion, which "if technically improper," did not give rise to prejudice when considered against weight of evidence, and court's instruction that argument was not evidence and jury was sole judge of credibility).

¶ 46. This brings us to defendant's second argument related to the prosecutor's closing argument—that the prosecutor repeatedly injected her own opinion regarding D.H.'s credibility into her argument. Defendant points in particular to two categories of statements: first, that D.H. had no reason to lie about the alleged incidents or fabricate allegations against defendant, and second, that D.H.'s detailed knowledge of sexual acts supported finding her testimony truthful.

¶ 47. Regarding the second of these arguments, each of the statements that defendant characterizes as an improper comment on the victim's precocious sexual knowledge is grounded in the evidence presented. D.H.'s testimony included detailed descriptions of the sound defendant made when he allegedly had penis-to-mouth contact with her, she described "the white stuff that comes out of a man's private," and she explained that defendant wiped himself off with a towel after ejaculation. D.H.'s mother testified that defendant habitually used a towel to wipe himself off after sex and that D.H. had never seen her having sex with defendant. In closing, the prosecutor recounted this testimony and stated with regard to each piece of evidence that, in essence, a ten-year-old girl would not know these details unless the incidents she alleged had actually happened. The prosecutor's statements did not go beyond the evidence presented and did not overtly express the prosecutor's own opinion. Rather, each statement that D.H.'s detailed knowledge of sexual acts supported the truthfulness of her testimony was effectively a statement that the detail and consistency of D.H.'s account supported the jurors finding her credible. As in Hemond, the prosecutor's statements "expressed what the prosecutor thought the jury would believe, and did not urge upon the jury the prosecutor's own view as to the guilt of the defendant." 2005 VT 12, ¶ 15.

¶ 48. Furthermore, defendant did not object to these statements and our review is for plain error. We will find plain error in a prosecutor's closing argument only where an error "impairs a defendant's right to a fair trial and strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice." Webster, 2017 VT 98, ¶ 25 (quotation omitted). Even if the statements defendant challenges could be construed to express the prosecutor's own opinion, the error is not so grave as to lead to any "miscarriage of justice." Id. Defendant points to only a handful of instances wherein the prosecutor stated that a child could not know the details in D.H.'s testimony unless the alleged acts occurred, at no point did the prosecutor overtly opine that she believed D.H., and each of the prosecutor's comments was tied to the evidence presented. Compare Hemond, 2005 VT 12, ¶¶ 15-16 (finding no plain error where prosecutor's statements

overtly framed as personal opinion "appeared sporadically at roughly six locations," expressed what prosecutor thought jurors would believe, "did not urge upon the jury the prosecutor's own view as to the guilt of the defendant," and were linked to evidence), with Ayers, 148 Vt. at 424-27, 535 A.2d at 333-34 (finding plain error where prosecutor repeatedly stated personal belief that witness testimony was true, comment was repeated several times in short closing argument, and "it appear[ed] from the transcript that the prosecutor's motive was to retaliate against . . . the defendant"). We conclude there is no plain error.

¶ 49.    Defendant also argues that the prosecutor improperly injected her personal belief and opinion into closing argument when she told jurors that D.H. had no motive to lie. Defendant did object to this comment. Our review of this argument is, therefore, for harmless error. When we review an argument for harmless error, we apply a two-step test: "[W]as the closing argument improper and, if so, did it impair defendant's right to a fair trial?" Webster, 2017 VT 98, ¶ 24. At the second step of this test, we consider a "nonexclusive" list of factors, including:

> the blatancy of the challenged statement, the impact on the theory of the defense, the persistence and frequency of the statement, the opportunity for the court to minimize potential prejudice, the strength of the evidence supporting the relevance of the statement, the overall strength of the State's case, the apparent motivation for making the remarks, and whether the statement was inflammatory and attacked defendant's character.

Hemond, 2005 VT 12, ¶ 12 (citations omitted). "Harmless error analysis requires the reviewing court to inquire if, absent the alleged error, it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict regardless of the error." Webster, 2017 VT 98, ¶ 24. The State bears the burden of showing that an error was harmless. Id. We conclude that this part of the prosecutor's closing may have been improper, but that any error is harmless.

¶ 50.    First, the prosecutor's comments on any motive to fabricate allegations against defendant went beyond the evidence presented during the trial. The prosecutor stated: "Everyone knows that when children lie, the story gets bigger, and bigger, and bigger until it's obvious that the child is lying." She went on to describe hypothetical circumstances, such as a pending custody

case or being in trouble at school, that she suggested might lead a child to fabricate allegations of abuse, and explained to the jury that none of those circumstances was relevant to D.H.'s disclosure. Defendant objected on the ground that the prosecutor's statement was not related to the evidence, and we agree with defendant on this point. We have previously held that "[w]hile prosecutors are entitled to a good deal of latitude in their closing arguments, they are bound to keep within the limits of fair and temperate discussion . . . circumscribed by the evidence in the case." State v. Rehkop, 2006 VT 72, ¶ 35, 180 Vt. 228, 908 A.2d 488 (quotation omitted). There was no evidence presented here to suggest that a pending custody case or school trouble existed or was relevant. The defense did not attempt to suggest that D.H. might have some extraneous reason to fabricate allegations against defendant, and though the State did elicit testimony that D.H.—other than the alleged sexual acts—had a good relationship with defendant, this testimony was at most incidental to D.H.'s descriptions of the alleged acts. Put simply, there was no suggestion during the course of the trial that D.H. may have fabricated the allegations against defendant because of a particular motive and thus the prosecutor's statements strayed somewhat beyond the evidence's confines.

¶ 51. But even if the prosecutor's comments went beyond the evidence, any possible error was harmless. The prosecutor's comments were limited and, even though the trial court overruled defendant's objection, the prosecutor did not continue to discuss possible motives for fabrication after the defense objection. And because the defense did not attempt to suggest that D.H. may have had some reason for fabrication, the prosecutor's comments had no bearing on the defense's theory. Nor was this statement directed at defendant's character or calculated to inflame the jury against defendant. See Hemond, 2005 VT 12, ¶ 12. Thus, even if technically improper, we conclude that "it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict regardless of the error." Webster, 2017 VT 98, ¶ 24.

¶ 52. Finally, defendant argues that the prosecutor again strayed beyond the evidence by reminding jurors they had implicitly promised during voir dire that they could convict solely on the word of a child. Defendant points to our decision in Scales, in which the prosecutor made

28

substantially the same statement regarding voir dire as the statement at issue in this case. 2017 VT 6, ¶ 25. We held that the prosecutor's comment "verges on impropriety" but declined to reverse on this basis—instead focusing reversal on the golden rule violation discussed above. Id. We reiterate here that a prosecutor's reference to voir dire discussions edges beyond the scope of the evidence presented during trial and, therefore, is technically improper. However, defense counsel properly objected to the prosecutor's voir dire comment in Scales and our review there was for harmless error. Id. As with the majority of the other errors defendant raises in this case, no objection was made to this statement during the prosecutor's closing, and our review in this case is for plain error. The prosecutor's comment was isolated, did not impinge on the defense, and was not directed at defendant. Having found the error at issue harmless in Scales, we will not now find the same statement plain error in this case.

Affirmed.

FOR THE COURT:

_____

Associate Justice

29